**Audre Lee KUROWSKI,
Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–3578.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1990.

Decided Nov. 13, 1990.

Stephen G. Katz, Katz, Friedman, Schur & Eagle, Chicago, Ill., for petitioner-appellant.

Peter K. Scott, I.R.S., Gary R. Allen, Laura Marie Conley O'Hanlon, Bruce R. Ellisen, Dept. of Justice, Tax Div., Appellate Section, Charles S. Casazza, U.S. Tax Court, Washington, D.C., for respondent-appellee.

Before CUMMINGS and MANION, Circuit Judges, and GRANT, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

Taxpayer Audre Kurowski was a tenured teacher who received $12,862 in settlement of a dismissal proceeding brought against her by her former employer. The Tax Court held that this amount did not constitute damages received on "account of personal injuries or sickness" and consequently was not excludable from her income under Section 104(a)(2) of the Internal Revenue Code (26 U.S.C. § 104(a)(2)). The Court held that there was a deficiency in income tax due from taxpayer for 1980 in the amount of $5,999.06, and taxpayer has appealed from this decision. We affirm.

A. Factual Background and Procedural History

In 1970 taxpayer began working as a teacher with the Community Consolidated School District 59 of Cook County, Illinois ("School District") and ultimately obtained tenure. In 1975 she and her husband were divorced. In the spring of 1974 during the divorce proceedings, she began to suffer from psychiatric problems requiring the School District to have her examined by Dr. Rolando de la Torre, a psychiatrist. He determined that she could not properly discharge her duties as a teacher, and in August 1974 she requested and received a leave of absence without pay.

Mrs. Kurowski was hospitalized for psychiatric treatment in January 1975. She was declared incompetent and became a ward of the State of Illinois. Her leave of absence was extended at the request of an attorney for Illinois. In December 1975 she was adjudicated to be competent. Thereafter the School District granted her request for an extension of her leave of absence to obtain a master's degree. After obtaining the degree in August 1976, she asked the School District to return her to active status. However, psychiatrist Dr. Robert Cutler reported that she could only function at a "borderline level," and shortly thereafter she was again hospitalized.

Finally, in April 1977, Dr. de la Torre and another psychiatrist reported that she was competent to return to work, and she was permitted to do so at the start of the school year in September 1977. However, Dr. de la Torre reported in February 1978 that she was not capable of functioning as a teacher in view of her paranoia. The following month the School District advised taxpayer that she could not continue her teaching assignment because of mental illness. As a result, in September 1978 the School District initiated dismissal proceedings to remove taxpayer from her tenured position. The School District served her with a bill of particulars setting forth the reasons why it decided to dismiss her in accordance with a resolution of the Board of Education. The dismissal notice stated that a hearing would be held on November 1, 1978. However, the dismissal proceeding was postponed to early 1979 at the joint request of counsel because of her inability to participate. In March 1979 psychiatrist Dr. Hel-

---

[*] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

ler reported that taxpayer's condition would permanently impair her teaching abilities. Subsequently the School District's counsel recommended a settlement with taxpayer, and in 1980 the controversy was settled for $12,862.

Although the settlement agreement was not reduced to writing, an October 1, 1979, letter from one of the counsel for the School District described it as follows:

A.  That the Board shall pass a resolution accepting Audre Kurowski's resignation and will withdraw the prior Dismissal Resolutions;

B.  District 59 and the Board will state to anyone inquiring as to the reason for Audre Kurowski's departure from District 59 that she left because the treatments required for her mental illness conflicted with her scheduled teaching assignment time requirements;

C.  That furthermore, assuming Audre's performance was satisfactory before the onset of her mental illness, that anyone inquiring as to her performance would be advised her performance was satisfactory before the onset of her illness;

D.  That Audre Kurowski would be paid the total amount of $12,862 constituting payment to her of three-quarters of her last year's annual salary; and

E.  That the compensation payment aforesaid be considered by the Board as settlement compensation and not salary so that Audre Kurowski would receive the more favorable tax treatment accorded such settlement compensation as opposed to payment of salary or wages.

At her Tax Court trial, taxpayer testified that she had retained counsel to regain her reinstatement and that she felt that the School District had caused her embarrassment, humiliation and personal suffering. She told her attorney that the damage to her reputation was worth millions, but her attorney advised taxpayer that "she didn't know if she [taxpayer] could take a stance like that."

Taxpayer added that she did not file a lawsuit against the School District regarding these "injuries" and was unaware of any demand by her attorney for compensation in an action against the School District. She added that she believed the School District was dropping its charge against her for insubordination and aberrational behavior and that she tendered her resignation as part of the settlement. She admitted that resignation from her tenured position was a condition of receiving the settlement proceeds and that she did not know if her alleged claim for embarrassment, humiliation and loss of reputation was being settled.

Taxpayer's attorney testified that she never made a tort-type claim against the School District on taxpayer's behalf, did not remember whether she had ever discussed a tort-type claim with the School District's counsel, and admitted that she was not aware of any such claim being made by taxpayer.

The School District's counsel testified that taxpayer's resignation was sought and then dismissal proceedings were commenced because of her performance as a teacher and her mental problems. He also stated that no tort-type claim was made against the School District.

The Tax Court found that the settlement was based on taxpayer's inability to teach and that the dismissal proceedings were brought to remove her from her tenured position because she had become ineffectual as a teacher. Therefore the court rejected taxpayer's assertion that the settlement proceeds represented damages for embarrassment and humiliation or because taxpayer had not been permitted to select her own physician. The court concluded the settlement was similar to an employer's buying out an employee's contract, and that the taxpayer was exchanging her tenure for the settlement proceeds. Consequently decision was entered in favor of the Commissioner.

B.  Applicability of Section 104(a)(2)

Section 104(a)(2) of the Internal Revenue Code provides that gross income does not

include "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." The rationale of the exemption is to free a taxpayer from liability for an amount received as compensation for a loss of that nature. "[T]he recovery does not generate a gain or profit but only makes the taxpayer whole by compensating for a loss." *Commissioner v. Miller*, 914 F.2d 586, 590 (4th Cir.1990), citing 1 B. Bittker, Federal Taxation of Income, Estates and Gifts para. 13.1.4 (1981). Here it is clear that in return for the $12,862 settlement, taxpayer resigned from her tenured teaching position and the School Board withdrew its pending dismissal charges. Since the settlement agreement did not expressly state that the payment was made on account of personal injuries, the payor's intent in making the payment becomes controlling. *Metzger v. Commissioner*, 88 T.C. 834, 847–848 (1987), affirmed without published opinion, 845 F.2d 1013 (3d Cir.1988). The record supports the Tax Court's finding that the School District did not intend to compensate taxpayer for personal injuries; both she and her attorney testified that she made no claim for personal injuries against the School District, and counsel for the School District and taxpayer concurred. None of the letters between the School District and its counsel mentioned that the settlement was intended to satisfy personal injury claims.

The applicable Treasury Regulations provide that the term "damages received" in Section 104(a)(2) refers to an amount received for the prosecution of an action "based upon tort or tort-type rights." Treasury Regulations on Income Tax, 26 C.F.R. sec. 104–1(c). Until she testified before the Tax Court, taxpayer never asserted any personal injury claims, and the School District did not require taxpayer to execute a release of any such claims. Plainly, the School District's payment was not designed to settle the prosecution of a tort or tort-type claim as required by the statute. *United States v. Garber*, 607 F.2d 92, 95 n. 2 (5th Cir.1979).

Taxpayer places great reliance on the fact that in the October 1, 1979, letter to the School District, the terms of the proposed settlement were described by one of its lawyers as intended to give taxpayer "more favorable tax treatment accorded such settlement compensation as opposed to payment of salary or wages." As explained by the Commissioner (Br. 22), the purpose in treating the compensation as "not salary" was apparently so that the School District would not withhold any federal income taxes from the settlement payment. This seems plausible since the settlement terms said nothing about "personal injuries or sickness."

We agree with the Tax Court that the School District paid taxpayer $12,862 in return for her resignation to avoid having to engage in contested formal dismissal proceedings. Except for after-the-fact self-serving testimony by the taxpayer, nothing in the record shows that the settlement was to compensate taxpayer for any "personal injuries or sickness" within Section 104(a)(2) of the Code. Indeed, no such claim had been made in the settlement negotiations. It is axiomatic that while taxable income should be broadly construed, exclusions to income should be narrowly defined. *Commissioner v. Miller*, 914 F.2d 586, 590, (4th Cir.1990) (holding that punitive damages are not excludable income within the meaning of Section 104(a)(2)). As in *Glynn v. Commissioner*, 76 T.C. 116 (1981), affirmed without published opinion, 676 F.2d 682 (1st Cir.1982), since no claim for personal injuries was ever made, the settlement amounted to severance pay.

Taxpayer relies on *Byrne v. Commissioner*, 883 F.2d 211 (3d Cir.1989). This case does not support her position, however. Byrne was discharged because she had cooperated with the Equal Employment Opportunity Commission's investigation to determine whether her employer was violating the Equal Pay Act. She received $20,000 in settlement of claims she might have arising out of the termination of her employment. There the Third Circuit held that Byrne's Fair Labor Standards Act Section 15(a)(3) claim for retaliatory discharge and her state law wrongful discharge claim were "more tort-like than contract-like" and therefore could be considered personal injury claims within Sec-

tion 104(a)(2). In contrast, the present settlement was not to resolve potential tort claims but to obtain taxpayer's resignation. Other Circuits have held that back pay awards are includable as gross income under Section 104(a)(2) based on a recognition that an individual must pay taxes on wages. *Thompson v. Commissioner*, 866 F.2d 709 (4th Cir.1989) (holding that an award of back pay under the Equal Pay Act is not excludable under Section 104(a)(2) when the award was for earned but unpaid wages as opposed to lost wages in a traditional personal injury action); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1580 (5th Cir.1989), certiorari denied, — U.S. —, 110 S.Ct. 718, 107 L.Ed.2d 738; *Wulf v. Wichita*, 883 F.2d 842 (10th Cir.1989).

Nor do *Pistillo v. Commissioner*, 912 F.2d 145 (6th Cir.1990), and *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir.1990), support taxpayer. In those cases, settlement proceeds were received on account of lawsuits brought under the Age Discrimination in Employment Act and therefore could be considered as settling the employers' torts in dismissing the taxpayers and within Section 104(a)(2).

The decision of the Tax Court is affirmed.