JAMES EDWARD HUFF, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huff
Docket No. 10459-91
United States Tax Court
T.C. Memo 1992-718; 1992 Tax Ct. Memo LEXIS 768; 64 T.C.M. (CCH) 1547; December 21, 1992, Filed Decision will be entered for respondent. James Edward Huff, Sr., pro se. For Respondent: Chalmers W. Poston, Jr.
DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 9,135 in petitioner's 1989 Federal income tax and an addition to tax of $ 3,017 pursuant to section 6661 [1] for that year. After concessions by petitioner, [2] the only issue remaining for decision is whether $ 30,936 petitioner received from his former employer in 1989 is excludable from income as "damages received * * * on account of personal injuries or sickness" under section 104(a)(2). *769 On July 8, 1992, respondent mailed a Request for Admissions to petitioner, who did not respond to the request. Therefore, pursuant to Rule 90(c), the facts set forth therein are deemed admitted. Freedson v. Commissioner, 65 T.C. 333 (1975).
FINDINGS OF FACT Petitioner resided in Kansas City, Missouri, at the time he filed his petition and amended petition. He timely filed an individual Federal income tax return for 1989. During 1989, petitioner was employed by Southwestern Bell Telephone (Southwestern Bell). He repaired and installed telephone services as a communications/customer services technician. Petitioner worked in this position for approximately 15 years. In March 1989, he injured his leg while descending a telephone pole. He informed his foreman of this accident. Over time his leg, and his knee in particular, continued to affect petitioner's performance on the job. He had continued absences from work due to discomfort from his knee. Based on his request, Southwestern Bell placed petitioner on disability leave between July 10, 1989, and August 25, 1989. In July 1989, an operation was performed *770 on his leg. At the end of August 1989, petitioner returned to work. However, he continued to suffer discomfort from his knee. On December 11, 1989, a Southwestern Bell General Manager authorized a Separation Proposal (1989 Separation Proposal) with regard to petitioner. This 1989 Separation Proposal had been signed by two Southwestern Bell Area Managers and two Southwestern Bell District/Division Managers. The 1989 Separation Proposal states, in part, as follows: 7) It is recommended that Mr. Huff be separated for unsatisfactory service. Mr. Huff is performing less than satisfactory in Attendance, Quality, Quantity, Safety and Effectiveness with Others. Mr. Huff was placed on the decision making leave (DML) level of Positive Discipline on September 25, 1989, for failure to meet minimum performance standards. When the DML meeting ended, Mr. Huff was instructed to return the next day, September 26, 1989, at 8:15 a.m. with his decision whether or not he would commit to meeting the Company's performance standards. Mr. Huff was asked if he understood, and he said yes he did. When Mr. Huff did not return to work the next day as requested, Mr. Kelly called him at 10:30 *771 a.m. Mr. Huff informed Mr. Kelly that he was under doctors care as recommended by Mr. Brian Garner of the Employees Assistance Program. When Mr. Garner was queried, he stated that he had not put Mr. Huff under doctors care. On October 16, 1989, Mr. Huff returned to work after 14 days of unexcused absence. He could not provide adequate reason or documentation for his absence, therefore, Mr. Huff was indefinitely suspended pending termination for unsatisfactory service. 8) Summary of Performance: Mr. Huff's composite performance for 1987 and 1988 was less than satisfactory. The DML which was administered on September 25, 1989, the last full day that Mr. Huff was at work, was for his unsatisfactory service. * * * 9) Termination Allowance: Amount-$ 30,936.00 Number of Weeks - 48 * * * 13) Other Information: Mr. Huff has stated that he had no incentive to work. His job performance is indicative of that statement. It is my opinion that Mr. Huff has no desire to work and will seek every opportunity to justify disability absence.
Petitioner was terminated from Southwestern Bell in December 1989. On Southwestern Bell's Payroll Change Report regarding *772 petitioner, dated December 12, 1989, the lump sum paid to petitioner is listed as "pay termination equal to 48 weeks pay". On February 5, 1991, petitioner signed an Agreement and Release (1991 Agreement) with Southwestern Bell. It was signed by the Southwestern Bell District Manager - Human Resources on April 10, 1991, and by a Communications Workers of America representative on April 2, 1991. The 1991 Agreement states, in part, as follows: In consideration of SWBT's [Southwestern Bell's] promise to permit Mr. Huff to participate in SWBT's Missouri Division Job Vacancy Plan, Mr. Huff agrees to hereby release and forever discharge all charges, claims, complaints, actions, and/or lawsuits against SWBT or its employees which the undersigned may have, known, or hereafter discovered by the undersigned on account, or connected with, or resulting from any violations by SWBT relating to Mr. Huff's employment and December 1989 termination with SWBT including any equal employment opportunity laws, ordinances, regulations or order, including but not limited to Title VII of the Civil Rights Act. * * * This Agreement and RELEASE shall not in any way be construed as an admission by *773 SWBT and its employees that they have acted wrongfully with respect to the employment and/or termination of Mr. Huff or that Mr. Huff has any claims against SWBT and its employees. * * *
On May 8, 1990, corrective surgery was again performed on petitioner's leg. In August 1990, petitioner applied for Social Security disability benefits. In March 1991, petitioner received a letter from the Social Security Administration, Retirement, Survivors and Disability Insurance, informing him that he was entitled to monthly disability benefits from the Social Security Administration from the period beginning December 1989. Petitioner was scheduled to receive his first check in April 1991. Petitioner's 1989 Federal income tax return was prepared by an H & R Block tax preparer. Petitioner did not report the $ 30,936 settlement proceeds he received from Southwestern Bell on his 1989 Federal income tax return. In the notice of deficiency, respondent determined that the $ 30,936 petitioner received from Southwestern Bell during 1989 should be included in his income for that year. OPINION At issue is whether the $ 30,936 petitioner received from Southwestern Bell in 1989 is includable *774 in his gross income for that year, or whether such amount is excludable from his gross income as "damages received * * * on account of personal injuries", within the meaning of section 104(a)(2). Respondent contends that the $ 30,936 is includable in petitioner's income. Petitioner disagrees. Petitioner bears the burden of proof. Rule 142(a). Section 61(a) includes in "gross income" all income from whatever source derived, unless otherwise provided. However, section 104(a)(2) provides that the amount of damages received (whether by suit or agreement) on account of personal injuries or sickness is not included in gross income. The rationale of the exemption is to free a taxpayer from liability for an amount received as compensation for a loss of that nature. Kurowski v. Commissioner, 917 F.2d 1033, 1036 (7th Cir. 1990), affg. T.C. Memo. 1989-149. In order for petitioner to prevail, he must prove that Southwestern Bell made the $ 30,936 payment to satisfy a tort or tort-type claim. See United States v. Burke, 504 U.S.    , 112 S. Ct. 1867 (1992); Stocks v. Commissioner, 98 T.C. 1, 9 (1992); *775 Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); Threlkeld v. Commissioner, 87 T.C. 1294, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988); sec. 1.104-1(c), Income Tax Regs. In the context of a payment made pursuant to a settlement agreement, the availability of the section 104(a)(2) exclusion from gross income depends on the nature of the underlying claim rather than the validity of the claim. Metzger v. Commissioner, supra; Fono v. Commissioner, 79 T.C. 680 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); Seay v. Commissioner, 58 T.C. 32, 37 (1972). "The intent of the payor" in making the payment is crucial in determining how section 104(a)(2) is to be applied. Metzger v. Commissioner, supra at 847-848; Glynn v. Commissioner, 76 T.C. 116, 120 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). *776 Because the agreement in this case does not clearly state that the payment was made on account of personal injury, petitioner must prove Southwestern Bell's intent from other facts. See, e.g., Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Metzger v. Commissioner, supra at 847-849. Petitioner argues that Southwestern Bell's payment to him constituted satisfaction of a potential tort claim stemming from the injury to his leg during working hours. Respondent contends that the payment to petitioner was in the nature of severance pay. We agree with respondent. The record shows that the main reason for the dispute between petitioner and Southwestern Bell was petitioner's poor job performance. The documentary evidence before us is clear: the 1989 Separation Proposal "recommended that Mr. Huff be separated for unsatisfactory service", and that he was "indefinitely suspended pending termination for unsatisfactory service" [emphasis added]. Petitioner has presented no evidence to establish that Southwestern Bell's intent in making the payment *777 was any different than that stated in the 1989 Separation Proposal. The only mention of petitioner's disability in the Separation Proposal is the following: "Mr. Huff has no desire to work and will seek every opportunity to justify disability absence." We think Southwestern Bell's purpose was not to indefinitely suspend petitioner because of his disability, but rather to terminate his employment because of his "unsatisfactory service", including poor work attendance and attitude. While we sympathize with petitioner's situation, it appears that he was terminated for unsatisfactory work performance. Thus, his "termination allowance" from Southwestern Bell was not made in payment of a tort or tort-type claim, as required under section 104(a)(2). Cf. Seay v. Commissioner, supra.
Neither the 1991 Agreement nor petitioner's qualification for Social Security disability benefits persuades us that Southwestern Bell's intent in making the termination allowance to petitioner was different than the reasons stated in the 1989 Separation Proposal. Although the 1991 Agreement included petitioner's release of any claims arising from the termination of his *778 employment, he gave that release in consideration of his admission to Southwestern Bell's Job Vacancy Plan, not in consideration of receipt of the $ 30,936 in issue here. He was not required to (and did not) sign a release in order to receive that $ 30,936, which was paid to him more than a year before he executed the 1991 Agreement. See Kurowski v. Commissioner, 917 F.2d at 1036. Finally, petitioner testified that he relied on the advice of his H & R Block return preparer not to include the $ 30,936 as income on his 1989 Federal income tax return. Generally, it is the taxpayer's duty to file accurate returns, and this duty cannot be avoided by delegating responsibility to an agent. See Pritchett v. Commissioner, 63 T.C. 149, 174 (1974). [3] Therefore, we reject petitioner's argument.
*779 In sum, petitioner has failed to produce any evidence, other than his self-serving testimony, that the $ 30,936 was in payment for his injury and disability. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). He has not met his burden of proving that Southwestern Bell intended to compensate him "on account of personal injuries or sickness". Sec. 104(a)(2). Consequently, respondent's determination is sustained. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial petitioner agreed to respondent's determinations with regard to his interest and pension income, Schedules A and C expenses and deductions, and the section 6661 addition to tax.↩
3. Although a taxpayer's reasonable reliance on the advice of tax counsel, if made in good faith and with complete and accurate disclosure, may insulate him from liability for the addition to tax for negligence, Ewing v. Commissioner, 91 T.C. 396, 423 (1988), and Daugherty v. Commissioner, 78 T.C. 623, 641↩ (1982), respondent did not determine the negligence addition to tax in this case, and therefore this defense is not relevant to an underlying deficiency.