T.C. Summary Opinion 2001-156


UNITED STATES TAX COURT


RONALD W. RAMEY AND JONI J. RAMEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1776-00S.          Filed September 26, 2001.


<u>Douglas S. Chiapuzio</u>, for petitioners.

<u>Robert V. Boeshaar</u>, for respondent.


    GERBER, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

_____

    [1] Unless otherwise indicated, all subsequent sections refer
to the Internal Revenue Code in effect for the year in issue.

Respondent determined a $5,164 deficiency in income tax for petitioners' 1995 taxable year. The sole issue for our consideration is whether proceeds received by Joni J. Ramey (petitioner) in settlement of an action under the Fair Labor Standards Act of 1938 (FLSA), ch. 676, secs. 1, 16(b), 52 Stat. 1060, current version at 29 U.S.C. secs. 201, 216(b) (1994), are for personal injury or sickness and excludable from her gross income under section 104(a)(2).

## Background[2]

In 1993, 267 employees (the class) of PayLess Drugstores, Inc. (PayLess), filed a class action lawsuit under the FLSA in the U.S. District Court for the District of Idaho (the lawsuit). One of these employees was petitioner.

The class alleged that, despite managerial-sounding titles and job descriptions, they were, in fact, hourly employees who were required to work overtime without compensation. As relief, the class sought to be paid time-and-a-half for all the hours worked in excess of the statutory limit of 40 hours, liquidated damages in an amount equal to the unpaid overtime compensation, and attorneys' fees and costs.

In January 1995, the class action was settled for $5 million, and the plaintiffs sought judicial approval of the settlement. In a memorandum in support of their motion,

---

[2] The facts were fully stipulated.

plaintiffs explained that the cash settlement was to be distributed as follows:

(1) All plaintiffs receive a $1,000.00 allocation, appropriate individuals receive $3,000.00 deposition scheduling allocation, $5,000.00 deposition attending allocation and named plaintiffs receive a $15,000.00 representation allocation.

(2) Each individual's claim is valued based on the fluctuating average workweek calculation.

(3) The hours claimed are taken from the interviews of plaintiffs by plaintiff's counsel.

(4) The hourly rate is determined from PayLess payroll records.

(5) All overtime hours and individual claims between two years prior to the consent date and November 1, 1992 are given 95% of calculated value to discount for a potential finding of no liability.

(6) All overtime hours and individual claims for the time period between two and three years of their consent date are given 50% of calculated value to discount for a finding of no liability.

(7) All overtime hours claimed for the time period between March 8, 1990 and three years prior to an individual's consent date are given 5% of calculated value to recognize the limited, although existing, possibility that plaintiffs could have recovered for this time period.

(8) The individual's claim is then totaled.

(9) The remaining portion of the settlement, that is, the total settlement minus the amount allocated for participation and back wages is apportioned the same ratio as that of each individual's calculated back wages to

the total of the calculated back wages for the class.

(10) The sum of the participation allocation, the back wages allocation and the liquidated damages allocation equals each individual's "Total Recovery."

(11) From the individual's total recovery the contractual attorney fee is then subtracted.

(12) Each individual is then allocated a share of the costs of the litigation based on the same ratio as that person's total recovery to the total settlement proceeds. That share of the costs is then subtracted.

The settlement allocation was approved by the court on January 20, 1995. On January 21, 1995, the plaintiffs entered into a settlement agreement and release. The agreement contains the statement that "All Settlement Proceeds are paid to the Plaintiffs on account of personal injuries". (Emphasis added). Moreover, the release contains the following paragraph:

3. Release of PayLess by the Plaintiffs

In exchange for the payment of the amount set forth in paragraph 7 below * * * Plaintiffs * * * hereby release and discharge PayLess * * * from all actions, claims, or demands for damages, liabilities, costs, or expenses, which the Plaintiffs, individually or collectively, have against PayLess on account of, or in any way arising out of the claims that were asserted or that could have been asserted in the Lawsuit by the Plaintiffs, which Lawsuit is hereby acknowledged as not fully plead, [sic] further including, but not limited to, claims for personal injuries, intentional infliction of emotional distress, negligent infliction of emotional distress, and from all known claims, whether based in tort, statute or contract, which are based in whole or in part, or arise out of, or in any way relate to: (1) the Lawsuit; and (2) anything done or allegedly done by PayLess arising out of, or in conjunction with or relating to, the employment of any and/or all Plaintiffs prior to November 1, 1992 by

PayLess.

On March 17, 1995, pursuant to the above settlement, petitioner received a payment of $27,184.16 ($8,869.00 back wages, $18,315 designated as liquidated damages) from which attorney's fees of $9,387 were deducted, for a net payment of $17,797.16.[3]

Petitioner did not report any portion of the $27,184.16 on her 1995 income tax return. Respondent determined that petitioner must include the $27,184.16 in her 1995 gross income. Respondent also allowed petitioner $8,663 as a miscellaneous itemized deduction for attorney's fees incurred to collect back wages.

Petitioner contends that the $27,184.16 settlement is not includable in her gross income. She argues that at least 50 percent of her award is attributable to a recovery for the intentional and/or negligent infliction of emotional distress and is excludable under section 104(a)(2).

Respondent counters that the $27,184.16 in damages was not paid on account of personal injuries. Instead, respondent contends that the settlement proceeds resulted from the claim set forth in the complaint--the FLSA claim which does not provide for personal injury compensation. Respondent also contends that any

---

[3] On brief, respondent argues that attorney's fees should not be excluded from petitioner's gross income. However, the question of whether attorney's fees are excludable was not raised by petitioners as an issue in this case. Accordingly, there is no need to address respondent's argument.

settlement language to the contrary was a "naked attempt" to qualify under section 104(a)(2) and therefore should be disregarded.

<u>Discussion</u>

Section 61 provides that all income from whatever source derived is included in gross income, except as otherwise provided.  This definition of gross income is broadly construed. See <u>Commissioner v. Schleier</u>, 515 U.S. 323, 327-328 (1995). Accordingly, any statutory exclusions from income must be narrowly construed.  <u>Id.</u>

One such exclusion, provided for in section 104(a)(2), is that "damages [received] (whether by suit or agreement and whether as lump sums or periodic payments) are excluded from gross income if those damages were received on account of personal injuries or sickness".  However, two requirements must be met.  <u>Commissioner v. Schleier</u>, <u>supra</u> at 337; sec. 1.104-1(c), Income Tax Regs.  First, the claims from which the lawsuit arose and upon which it settled, must be "based upon tort or tort type rights."  <u>Commissioner v. Schleier</u>, <u>supra</u> at 337.  Second, the damages must have been received "on account of personal injuries or sickness."  <u>Id.</u>  For the exclusion to apply, both requirements must be satisfied.[4]  <u>Id.</u>; <u>Jacobs v. Commissioner</u>, T.C. Memo.

---

[4] It must be noted here that a "personal injury" is different from an "economic injury".  A personal injury includes nonphysical injuries such as those affecting emotions, reputation, or character.  <u>United States v. Burke</u>, 504 U.S. 229,

2000-59.

The Nature of the Claim

First we consider whether the claim settled was based upon a tort or tort type cause of action.  From the record before us, we consider the evidence, the stipulated facts, the complaint, and the intent of the payor.  Threlkeld v. Commissioner, 87 T.C. 1294, 1306 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Bent v. Commissioner, 87 T.C. 236, 245 (1986), affd. 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80 T.C. 1104, 1107 (1983).

There is no dispute that the 1993 complaint arose under the FLSA to recover unpaid overtime compensation, liquidated damages, attorney's fees and costs.  It is well settled that an action under the FLSA, in and of itself, is not based upon a tort or tort type right.  See Jacobs v. Commissioner, supra.  The FLSA was enacted to establish minimum wages and maximum hours for employees and it does not provide for personal injury compensation.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Jacobs v. Commissioner, supra.  The only relief available under the FLSA is the payment of back wages and liquidated damages for excessive hours worked.  See 29 U.S.C.

235 n.6 (1992).  But see Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, which amended sec. 104(a)(2) to provide that for amounts received after Aug. 20, 1996, a "personal injury" is limited to a physical injury.  On the other hand, an economic injury includes injuries such as those arising out of the unlawful deprivation of either full wages earned or the opportunity to earn them.  Id.

sec. 216(b) (1994).  These liquidated damages are intended to compensate employees not for personal injury but for damages that may be too obscure or difficult to estimate because of the delay of wage payment.  See <u>Overnight Motor Transp. Co. v. Missel</u>, 316 U.S. 572, 583-584 (1942).

Accordingly, if a claim arose solely under the FLSA, petitioner would most likely fail to meet the test of <u>Commissioner v. Schleier</u>, <u>supra</u>.  However, petitioner argues that, along with the FLSA claim, another claim existed--the intentional and/or negligent infliction of emotional distress.[5] Petitioner contends that this, and not the FLSA claim, was the claim upon which the lawsuit was settled.

Indisputably, no claims for personal injury were alleged in the 1993 class action pleadings.  Nevertheless, petitioner points out that under <u>Pipitone v. United States</u>, 180 F.3d 859, 863 (7th Cir. 1999), the absence of an allegation does not bar the existence of a tort claim or the ability of the parties to settle upon it.

We agree that claims need not be specifically enumerated to be the basis of a settlement.  Nonetheless, the payor must be aware of that claim.  <u>Id.</u>  Practically speaking, the complaint is

---

[5] Petitioner claims that she experienced "dry heaves" and had to take prescription Tagamet to prevent an ulcer.  She also claims that her marriage suffered because of job-related stress.

the easiest way to prove a payor's awareness.  However, if a payor's awareness can be shown by other means, then the lack of a formal complaint does not bar either the existence of that claim or its ability to be the basis of a settlement.  Id.

Petitioner argues that PayLess and its attorneys did know about her claim for the intentional and/or negligent infliction of emotional distress.  Petitioner claims that she told the class action attorneys about her physical injury and sickness and that this information was conveyed to PayLess' attorneys during the settlement negotiations.

Petitioner argues that language in the settlement documents, such as the release, reflects the attorneys' knowledge of her injuries.  In that regard, the release (a) acknowledges that the "Lawsuit * * * [was] not fully plead" and (b) discharges PayLess of any other claims "including, but not limited to, claims for personal injuries, intentional infliction of emotional distress, [and] negligent infliction of emotional distress."  Petitioner argues that because the discharge of the tort claims follows the acknowledgment that the lawsuit was not fully pleaded, it proves that PayLess and its attorneys knew and were admitting that the tort claims existed and could still be pleaded.

We acknowledge that this statement may indicate a generalized knowledge of PayLess' attorneys that injuries existed within a broad class of claimants.  However, from looking at the

language, there is no way to tell for certain that PayLess and its attorneys knew of petitioner's particular situation. In fact, this could merely be a concession made by PayLess' attorneys to settle the claim quickly. While this statement benefited petitioner and other plaintiffs for tax purposes, it made no difference to PayLess. Moreover, when analyzing similar release language in a previous case, we held that generic, blanket type statements would not suffice. Jacobs v. Commissioner, supra.

Accordingly, petitioner has failed to meet the first requirement under Commissioner v. Schleier, 515 U.S. 323 (1995). An action under the FLSA is not based upon a tort or tort type right. Additionally, petitioner has not shown that her claim for the intentional and/or negligent infliction of emotional distress existed so as to qualify for exclusion of damages under section 104(a)(2).

The Nature of the Damages

Even if petitioner had shown that her claim of intentional and/or negligent infliction of emotional distress existed, we would still need to consider whether the damages were received on account of that specific claim. Under section 104(a)(2) it is irrelevant that a tort claim existed if PayLess paid damages only for the FLSA claim. For this reason, there must be an actual link between the claim of intentional and/or negligent infliction of emotional distress and the amount paid. Pipitone v. United

States, supra at 865.

In making this determination, we must examine the terms of the agreement.  Id. at 863.  In particular, we examine the agreement language that "all Settlement Proceeds * * * [were] paid * * * on account of personal injuries."  Petitioner contends that this sentence irrefutably proves that part of the liquidated damages were received on account of her personal injuries. Petitioner further contends that under Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997), we must accept the terms of the parties' agreement unless facts and circumstances deem otherwise.

Respondent counters that liquidated damages in a FLSA lawsuit, by their very nature, are not and cannot be on account of personal injuries.  See Overnight Motor Transp. Co. v. Missel, supra at 583-584.  Rather, liquidated damages compensate plaintiffs for back wages and incidental costs.  Id.  In light of this, respondent contends that the inclusion of this language was a "naked attempt [by the plaintiffs] to bring the proceeds under * * * section 104(a)(2)."

Despite petitioner's contention that we must accept the agreement's terms, we cannot blindly accept labels which parties attach to transactions.  See Robinson v. Commissioner, 102 T.C. 116 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995); Peaco v. Commissioner, T.C. Memo. 2000-122.  More

importantly, the facts and circumstances in the record in this case do not support petitioner's claim.

First, the language is not supported by the evidence in our record. We know that <u>all</u> proceeds were <u>not</u> paid on account of personal injury. Plaintiffs, in their memorandum in support of the motion for judicial approval, allocated all settlement proceeds according to back wages, attorney's fees, and lawsuit involvement. We find it significant that there was no allocation for personal injury when the parties to the class action meticulously provided for all of the items involved in the FLSA claim. Petitioner dismisses this as a mere technicality. We cannot so easily ignore this aspect--especially in light of the fact that petitioner admits on brief that up to 50 percent of the proceeds could have been received on account of the FLSA claim.

Second, this language does not show a direct link between the tort claim and a specific amount of money. It is well settled that "Failure to show the specific amount of the payment allocable to the claims of tort or tortlike damages for personal injuries results in the entire amount's being presumed not to be excludable." <u>Wise v. Commissioner</u>, T.C. Memo. 1998-4; see also <u>Jacobs v. Commissioner</u>, T.C. Memo. 2000-59.

Considering that exclusions from income (including those in section 104(a)(2)) are narrowly construed, we cannot accept petitioner's contentions on this record that the uncorroborated and equivocal statements in the agreement and release are

sufficient to show petitioner's personal injury or qualification for exclusion.  <u>Pipitone v. United States</u>, 180 F.3d at 863-865, (citing <u>Kurowski v. Commissioner</u>, 917 F.2d 1033, 1036 (7th Cir. 1990), affg. T.C. Memo. 1989-149).  We hold that the damages received were on account of the FLSA for back wages, liquidated damages, attorney's fees and costs, and <u>not</u> for personal injury.

To the extent not herein discussed, we have considered all other arguments made by the parties and conclude they are moot or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.