United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-1768

_____

| | | |
|---|---|---|
| Hughes A. Bagley and | * | |
| Marilyn B. Bagley, | * | |
| | * | |
| Appellants, | * | |
| | * | On Appeal from the |
| v. | * | United States Tax Court. |
| | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  June 9, 1997

Filed:  August 6, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
      WOLLMAN, Circuit Judge.

_____

RICHARD S. ARNOLD, Chief Judge.

In August 1987, Hughes Bagley settled an eight-year-old lawsuit against Iowa
Beef Processors, Inc. ("IBP"), for $1.5 million.  In their tax return for that year, Mr.
Bagley and his wife, Marilyn Bagley, excluded the entire settlement amount from their
taxable income.  The Commissioner determined that $1,305,000 of the $1.5 million was
not excludable and asserted a deficiency in the Bagleys' 1987 income tax, a

determination which the Bagleys contested in the Tax Court. The Tax Court[1] held that $500,000 of the settlement was not excludable, <u>Bagley v. Commissioner</u>, 105 T.C. 396 (1995), and the Bagleys appealed. We affirm.

I.

This case addresses the tax consequences of a settlement that followed our decision in <u>In re IBP Confidential Business Documents Litigation</u> (<u>Bagley v. Iowa Beef Processors, Inc.</u>), 797 F.2d 632 (8th Cir. 1986) (en banc), <u>reh'g denied</u>, 800 F.2d 787 (1986) (en banc), <u>cert. denied</u>, 479 U.S. 1088 (1987). The facts of the case are recounted in that opinion, and there is no need to detail them here. What is important for purposes of this appeal is that a jury in 1982 found IBP liable to Bagley on four separate claims and awarded compensatory damages in the amount of $1.5 million and punitive damages in the amount of $7.25 million. The breakdown was as follows:

| <u>Claim</u> | <u>Compensatory</u> | <u>Punitive</u> |
|---|---|---|
| Tortious interference with present employment | $ 150,000 | $ 500,000 |
| Tortious interference with future employment | $ 100,000 | $ 250,000 |
| Libel | $1,000,000 | $5,000,000 |
| Invasion of Privacy | <u>$ 250,000</u> | <u>$1,500,000</u> |
| Total | $1,500,000 | $7,250,000 |

In response to IBP's subsequent motion for judgment notwithstanding the verdict, the District Court dismissed the invasion-of-privacy claim, finding that the jury's award was duplicative of the libel award, but upheld the remaining three claims. On appeal, this Court reversed the libel judgment and remanded the libel claim for a new trial

---

[1]The Honorable Irene F. Scott, Judge, United States Tax Court.

-2-

because the District Court had erroneously instructed the jury that defendant IBP bore the burden of proof on a key issue. This Court affirmed the judgment on the tortious-interference-with-present-employment claim. In addition, we upheld the tortious-interference-with-future-employment judgment with respect to liability but vacated it with respect to damages. We then remanded with instructions that if Bagley prevailed on his libel claim on retrial, the District Court should then determine the extent to which the tortious-interference-with-future-employment damages were duplicative of the libel award. After our decision, in denying as premature Bagley's motion to reinstate the invasion-of-privacy award, the District Court stated that if Bagley lost his libel claim at trial or elected not to pursue it further, the Court would be inclined to reinstate the awards for invasion of privacy and tortious interference with future employment.

Less than two months before a new trial on the libel claim was scheduled to begin, the parties met for a settlement conference. During the conference, IBP's lawyer told Bagley's lawyer that IBP would not agree to pay punitive damages. After two weeks of negotiations, the parties agreed to settle the case for $1.5 million. The settlement agreement stated that the award was paid "as damages for personal injuries including alleged damages for invasion of privacy, injury to personal reputation including defamation, emotional distress and pain and suffering." IBP also agreed to dismiss a pending cause of action that it had filed ten years earlier against Bagley, and Bagley agreed to return to IBP business documents that he had in his possession.
The parties also agreed to use their best efforts to keep the terms of the settlement confidential. Bagley released all his claims against IBP, including, necessarily, any claim for punitive damages.

On their 1987 tax return, the Bagleys excluded the entire amount of the settlement from their taxable income. The Commissioner maintained that $1,305,000 of the settlement agreement was a taxable award of punitive damages and asserted a deficiency in the Bagleys' 1987 income tax. The Bagleys filed a petition in the Tax Court challenging the Commissioner's determination. They first argued that punitive

-3-

damages are not taxable, a position with which the Tax Court disagreed, and one that is no longer tenable given the Supreme Court's recent decision in O'Gilvie v. United States, 117 S. Ct. 452 (1996). In O'Gilvie, the Court held that the Internal Revenue Code's exclusion for damages "received on account of personal injuries" did not include punitive damages and, therefore, that punitive-damage awards are taxable income.[2] The Bagleys have abandoned their challenge to this part of the Tax Court's holding on appeal.

Second, the Bagleys argued that none of the $1.5 million settlement represented the payment of punitive damages. Accordingly, they argued, the entire amount was properly excluded as compensatory damages received on account of personal injuries under 26 U.S.C. §104(a)(2). While the Tax Court disagreed with the Commissioner's contention that $1,305,000 of the settlement was taxable,[3] it also disagreed with the Bagleys' contention that none of it was. Instead, the Tax Court reasoned that "it is reasonable to assume that IBP would have paid in settlement to [Bagley] the entire $1 million that the jury had found he was due as compensatory damages [on the libel claim]. However, . . . the remaining $500,000 was in settlement of possible punitive damages [Bagley] might have recovered." 105 T.C. at 410. The Court thus held that "of the $1.5 million settlement amount, $1 million was for compensatory damages and $500,000 was for punitive damages." Ibid. This appeal followed.

---

[2]The Tax Code now expressly states that punitive damages are not excludable from income. See 26 U.S.C. § 104(a)(2).

[3]The Commissioner does not contest the Tax Court's decision on appeal.

II.

When assessing the tax implications of a settlement agreement, courts should neither engage in speculation nor blind themselves to a settlement's realities. See Delaney v. Commissioner, 99 F.3d 20, 23-24 (1st Cir. 1996) (court must look beyond language of settlement to determine "'in lieu of what'" were damages paid) (citation omitted) (emphasis omitted). The reality when settlement negotiations began was that even if IBP had won Bagley's pending libel suit, it almost certainly would have had to pay $250,000 in punitive damages and would also have faced a significant risk of having to pay an additional $1,500,000 in punitive damages.[4] If IBP had lost the libel suit, its liability was uncertain, but a jury had already awarded Bagley $5,000,000 in punitive damages on the claim.[5] Therefore, IBP would in all likelihood have had to pay

---

[4]Bagley's failure to appeal the original dismissal of the invasion-of-privacy award allowed the dismissal to become final and thus created some uncertainty about whether the District Court could have reinstated the invasion-of-privacy award if Bagley lost the libel suit. The Bagleys plausibly argued, and the District Court seemed inclined to agree, that the District Court could reinstate the judgment under Federal Rule of Civil Procedure 60(b)(5), authorizing relief from a final judgment where the judgment was based upon "a prior judgment" that has since "been reversed or otherwise vacated." Because the invasion-of-privacy award had been dismissed only because the District Court found it to be duplicative of the libel award, and because the libel judgment that was the basis for the dismissal of the invasion-of-privacy judgment had been reversed by this Court, Bagley had a plausible argument that the District Court could use Rule 60(b)(5) to reinstate the invasion-of-privacy award if he ultimately failed to prevail on his libel claim. Thus, while the reinstatement of the invasion-of-privacy award was not a sure thing, it was a likely enough prospect to be worth something in settlement.

[5]As the Commissioner points out, this Court's reversal of the libel claim had nothing to do with the amount of the claim. Thus, there was no legal bar to Bagley's recovering the same amount if he prevailed on retrial. The Bagleys argue that the second trial might have been different because evidence admitted solely to prove other claims at the first trial would not have been available to Bagley at the retrial of the libel claim. The Bagleys present no evidence, however, that the expected absence of this

-5-

a sizable punitive-damage award whether it won or lost the libel suit. The Bagleys' argument that none of the settlement is taxable requires us to believe that this potential liability did not affect the size of the settlement at all, and thus, that IBP paid nothing to Bagley to secure a release from this sizable exposure.

In support of this unlikely contention, the Bagleys point to the absence of any reference to punitive damages in the settlement agreement and the statement of IBP's lawyer at the commencement of settlement negotiations that IBP refused to pay punitive damages. Both pieces of evidence demonstrate at best that IBP did not want to show an allocation to punitive damages in the settlement agreement. But proof of a defendant's desire or intent not to show an award of punitive damages does not establish that the defendant did not pay something to avoid punitive damages, where there is solid evidence that the prospect of punitive-damages liability necessarily increased the amount that the defendant paid in settlement.

The Bagleys argue correctly that the language of a negotiated settlement agreement that allocates nothing to punitive damages should not lightly be disregarded. Initially, however, we note that while the agreement in this case does not expressly allocate anything to punitive damages, it also does not explicitly say that punitive damages are not part of the settlement.[6] More importantly, the language of a settlement

---

evidence at the second trial materially affected the lawyers' estimation of the likelihood that Bagley would have received a significant amount of punitive damages if he won his libel claim on retrial.

[6]In McKay v. Commissioner, 102 T.C. 465 (1994), vacated on other grounds, 84 F.3d 433 (5th Cir. 1996) (unpublished), for example, the settlement agreement was far more explicit that the defendant did not intend to pay punitive damages in settlement, and the Tax Court upheld the allocation:

> McKay has necessarily acceded to Ashland's demand that
> nothing be allocated to the RICO claim, punitive damages

agreement cannot always be dispositive. It will almost never be to a defendant's advantage to allocate part of a lump-sum settlement to punitive damages, and it will often be disadvantageous. Often, insurance policies will not cover such awards, and punitive-damage awards result in worse publicity than compensatory awards. Most plaintiffs will not want specific allocations to punitive damages in their settlement agreements, because punitive damages are taxable. Therefore, when the time comes to settle a case, no matter how adversarial the proceedings have been to that point, the parties will almost always be in agreement that no part of a settlement agreement should be explicitly allocated to punitive damages.[7]

The Bagleys also rely on the statement of IBP's lawyer during the settlement negotiations that if Bagley wanted punitive damages, he would have to go to trial. One is tempted to dismiss such a statement as a negotiation tactic. IBP's general counsel stated that IBP's goal in settlement negotiations was simply to settle for the lowest amount possible, and the Bagleys do not point to any other evidence suggesting that IBP's desire to avoid an allocation to punitive damages was especially strong. The Tax Court found that "counsel for IBP did not want to show an allocation to punitive damages" and that "it was clearly in the interest of both parties not to show an amount allocated to punitive damages." 105 T.C. at 409. Even so, IBP was not in a position

---

> claims, or alleged intentional misconduct claims and Ashland and McKay have both relied upon their appellate counsel's consensus estimate of McKay's probability of appellate success with respect to the [claims that defendant Ashland agreed to pay.]

Id. at 484 (quoting settlement agreement).

[7]Indeed, IBP's attorney, an experienced Iowa litigator, told the Tax Court that he could recall no settlement with which he had been involved that specifically allocated a certain amount to punitive damages in the settlement agreement. Appellants' Br. 44.

to demand that punitive damages not figure into the amount of the settlement, since the prospect of punitive-damages liability was so likely no matter what the result of the pending libel trial. Proof of IBP's desire to avoid an express allocation to punitive damages cannot overcome the evidence that IBP necessarily paid more to settle Bagley's claims against it because of the very real threat of punitive-damages liability that it faced.

A final piece of evidence that part of the settlement reflects the payment of punitive damages is that IBP paid $500,000 more to settle Bagley's claims than the jury had awarded in compensatory damages on the libel claim, the largest of the three awards. While it is theoretically possible that the jury might have awarded even more in compensatory damages on retrial of the libel claim and nothing in punitive damages, it is far more likely that IBP paid the extra $500,000 to settle the punitive-damages liability it faced.

Finally, the differences between this case and McKay, supra, 102 T.C. 465, which the Bagleys cite in support of their claim, are instructive. In McKay, a jury awarded the taxpayer close to $14.5 million in compensatory damages, $1,250,000 in punitive damages, and $43 million for the defendant's violation of RICO. In settlement negotiations after the verdict, the defendant was adamant that no part of the settlement be allocated to punitive damages or the RICO claim, and the settlement agreement expressly reflected that sentiment. The agreement allocated $14,294,300 to compensatory damages and nothing to punitive damages, and the Tax Court upheld this allocation. Id. at 487.

Several facets of this case distinguish it from McKay. First, the Tax Court found in McKay that the taxpayer "desired that a portion of the settlement proceeds be allocated to the RICO claim in order to publicize [the defendant's] unlawful activity." 102 T.C. at 473. Thus, unlike in the present case where neither side wanted a specific allocation to punitive damages in the settlement agreement, the parties in McKay were

genuinely adverse as to the issue of how to allocate the settlement proceeds, and so the Court could properly assume that the agreement reflected the reality of the situation. Second, the agreement in McKay expressly stated both that none of the settlement went to punitive damages and that the parties came to that conclusion based upon their attorneys' estimates of the probability of appellate success on the punitive claims. Third and finally, unlike in this case, the amount of settlement in McKay (less the amount allocated to attorneys' fees) was less than the jury had awarded in compensatory damages, thus making it plausible that the defendant had agreed to pay only compensatory damages.

## III.

The Bagleys argue only that none of the settlement in this case was taxable. They do not suggest an alternative amount that the Tax Court should have awarded between nothing and $500,000. We cannot say that $500,000 was not the proper amount. It gave the taxpayer the benefit of the largest amount that the jury had awarded in compensatory damages, and thus the largest amount that could plausibly be allocated to compensatory damages. See Robinson v. Commissioner, 70 F.3d 34, 38 (5th Cir. 1995) (Tax Court did not err in basing settlement allocation upon jury verdict, "the best indicator of the worth of the [taxpayers'] claims."), cert. denied, 117 S. Ct. 83 (1997). The judgment of the Tax Court is

Affirmed.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.