T.C. Memo. 2000-95


UNITED STATES TAX COURT


JOSEPH HENRY METELSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12307-98.                    Filed March 21, 2000.


Joseph Henry Metelski, pro se.

<u>Robert T. Bennett</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, <u>Special Trial Judge</u>:  Respondent determined a deficiency of $3,764 in petitioner's 1995 Federal income tax. The issue for decision is whether a lump-sum payment received by petitioner from his former employer is excludable from income under section 104(a)(2).  Section references are to the Internal Revenue Code in effect for the year 1995.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner filed a timely 1995 Federal income tax return. At the time the petition was filed, he resided in Bedminster, New Jersey.

Petitioner began employment with AT&T Communications, Inc. (AT&T) in December 1963 and remained so employed until his employment was terminated, as discussed below, on May 18, 1995. As of that date, and during all other times relevant here, he was a manager in AT&T's international operations division. As a manager, petitioner's employment relationship with AT&T was described as "at-will", which, according to an AT&T publication, meant that petitioner had "the right to terminate * * * [his] employment at any time for any reason, and * * * [AT&T reserved] the right to terminate * * * [petitioner] on the same basis, regardless of any statements, written or oral, by * * * [AT&T], or any of its employees or representatives, which may seem to be the contrary."

In early 1994, petitioner received formal notification that senior managers within his division had elected to implement AT&T's Force Management Program (the retirement program). He was 57 years old at the time. As described in literature provided to petitioner by AT&T, the retirement program was designed "to give

* * * [AT&T's] managers the flexibility they need to reduce the number of management employees when necessary" because of "force or skills imbalances resulting from conditions such as changes in business strategy, technological changes, unfavorable economic circumstances, decisions to exit a particular market or business, and facility/office closings or consolidations, position eliminations, business process reengineering and skills mismatch." Later that year petitioner was advised that he was within a category of manager/employees eligible to "voluntarily" terminate employment with AT&T in return for specified payments. In general, the payments were determined by a formula that took into account the number of years that the employee was employed by AT&T and the employee's age.

On August 31, 1994, petitioner signed the first of a series of documents that terminated his employment with AT&T pursuant to the retirement program. Under the options selected by petitioner, he was entitled to remain as an active AT&T employee for 35 weeks following the date of the above agreement. During this time, although not required to report to work, petitioner was compensated by periodic payments at his then salary (the periodic payments) and eligible for other employee benefits. At the conclusion of the 35 weeks, after signing several other program documents, releases, and waivers, petitioner became entitled to, and received, a lump-sum payment of $12,417.62 (the

lump-sum payment).  The amount of the lump-sum payment was specified under the terms of the retirement program to be 20 percent of the periodic payments.

The release/waiver that petitioner signed in connection with the lump-sum payment contained the following paragraphs:

4. I realize that there are various state and federal laws that govern my employment relationship with * * * [AT&T] and/or prohibit employment discrimination on the basis of age, color, race, gender, sexual preference/orientation, marital status, national origin, mental or physical disability, religious affiliation or veteran status and that these laws are enforced through the courts and agencies such as the Equal Employment Opportunity Commission, Department of Labor and State Human Rights Agencies.  Such laws include, but are not limited to, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, as amended, 42 U.S.C. Section 1981, etc.  In consideration of * * * [the lump-sum payment], I intend to give up any rights I may have under these or any other laws with respect to my employment and termination of employment at * * * [AT&T] and acknowledge that * * * [AT&T] * * * [has] not (a) discriminated against me, (b) breached any express or implied contract with me, or (c) otherwise acted unlawfully toward me.

5. Subject to paragraph 6 herein, on behalf of myself, my heirs, executors, administrators, successors and assigns, I release and discharge * * * [AT&T], and * * * [its] successors, assigns, subsidiaries, affiliates, shareholders, directors, officers, representatives, agents and employees ("Releases") from any and all claims, including claims for attorney's fees and costs, charges, actions and causes of action with respect to, or arising out of my employment or termination of employment with * * * [AT&T].  This includes, but is not limited to, claims arising under federal, state, or local laws prohibiting age, color, race, gender, sexual preference/orientation, marital status, national origin, mental or physical disability, religious

affiliation or veteran status or any other forms of
discrimination or claims growing out of * * * [AT&T's]
termination of its employees.  With respect to any
charges that have been or may be filed concerning
events or actions relating to my employment or the
termination of my employment and which occurred on or
before the date of this * * * [release/waiver], I
additionally waive and release any right I may have to
recover in any lawsuit or proceeding brought by me, an
administrative agency, or any other person on my behalf
or which includes me in any class.

As the parties have stipulated, before the relevant
documents/releases/waivers were signed by him, petitioner "had
not made any claim against AT&T arising out of his employment",
he "had not threatened, nor brought to the attention of AT&T, the
possibility of a claim against AT&T arising out of his
employment", and he "was not aware of any emotional or physical
harms that he * * * [might] have suffered that were directly or
indirectly caused by his employment with AT&T".

The lump-sum payment and the periodic payments that
petitioner received in 1995 were included in the wages reported
on a Form W-2 issued to petitioner by AT&T for that year.

On his 1995 Federal income tax return, petitioner reported
the periodic payments received in 1995, but did not report the
lump-sum payment.  In the notice of deficiency, respondent
determined that the lump-sum payment must be included in
petitioner's 1995 income.

OPINION

Except as otherwise provided, gross income includes income from whatever source derived. See sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). The term "gross income" is broadly construed. Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995). Generally, severance pay fits within the definition of gross income. See, e.g., Taggi v. United States, 35 F.3d 93 (2d Cir. 1994); Glynn v. Commissioner, 76 T.C. 116 (1981) affd. without published opinion 676 F.2d 682 (1st Cir. 1982).

On the other hand, gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Sec. 104(a)(2). To qualify for exclusion under that section, "damages" must be "received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. Under section 104(a)(2), a taxpayer may exclude damages from income only if: (1) The underlying claim that gave rise to the damages was based upon tort or tort type rights; and (2) the damages were received on account of personal injuries or sickness. See Commissioner v. Schleier, supra at 333-334; Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. 121 F.3d 393

(8th Cir. 1997).  Like other exclusion provisions, section 104(a)(2) is narrowly construed.  See Commissioner v. Schleier, supra.

According to petitioner, the lump-sum payment fits within the definition of damages under section 104(a)(2) and is excludable from his income under that section.  Petitioner acknowledges that prior to receiving the lump-sum payment:  (1) He never made any claim against AT&T for damages of any type; (2) he was unaware of any personal injuries or sickness that AT&T might have caused; and (3) he was unaware of any tort or tort type claim for damages that he might have had against AT&T. Nevertheless, in support of his position, he argues that AT&T must have considered that he had some claim against the company, otherwise he would not have been required to sign the release/waivers in return for the lump-sum payment.

According to respondent, petitioner has failed to establish that the lump-sum payment can be excluded from petitioner's income under section 104(a)(2).  Furthermore, respondent contends that the lump-sum is properly characterized as severance pay that must be included in petitioner's 1995 income.  We agree with respondent on both points.

There is nothing in the record that suggests that petitioner suffered any personal injury or sickness caused by his employment with AT&T or the termination of that employment.  Petitioner's

testimony on the point and the stipulation of the parties indicate otherwise. Furthermore, the only evidence in the record that remotely suggests that the lump-sum payment was made to compensate petitioner for personal injuries or sickness is the language used in the release/waivers that petitioner was required to sign pursuant to the retirement program. Contrary to petitioner's presumption, however, the requirement that petitioner waive any such rights against AT&T does not in and of itself establish the existence of such rights. Nor does that requirement establish that the lump-sum payment was made in settlement of a claim that petitioner might have had against AT&T for the violation of any such rights.

We are satisfied that the lump-sum payment does not qualify for exclusion under section 104(a)(2). Our conclusion in this regard is supported on several grounds. First, from all indications in the record, the release/waivers that petitioner was required to sign were used by AT&T in the case of any manager/employee who was eligible and elected to terminate employment under the retirement program. Secondly, the amount of the lump-sum payment was not determined with respect to any tortious conduct on AT&T's part; instead the lump-sum payment was determined with reference to petitioner's years of employment with AT&T and his age. Lastly, considering that the lump-sum payment was made as part of the retirement program, it is more in

the nature of severance pay, as respondent contends.  See <u>Sodoma</u> <u>v. Commissioner</u>, T.C. Memo. 1996-275, affd. 139 F.3d 899 (5th Cir. 1998).

It follows that petitioner must include the lump-sum payment in his 1995 income and respondent's determination in this regard is sustained.

Based on the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.