T.C. Memo. 2001-135


UNITED STATES TAX COURT


WILLIAM J. BROEDEL AND JOAN C. BROEDEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2405-98.                        Filed June 8, 2001.


William J. Broedel and Joan C. Broedel, pro sese.

<u>Anne D. Melzer</u>, <u>Edward D. Fickess</u>, and <u>John D. Steele, Jr.</u>,
for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a deficiency of $18,161
in petitioners' joint 1994 Federal income tax.  The issues for
decision are:  (1) Whether $58,372.50 received from the State
University of New York Institute of Technology in 1994 is
excludable from petitioners' gross income under section

104(a)(2);[1] and (2) whether petitioners realized $13,393.54 in income in 1994 from the New York State and Local Retirement System.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, the second supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners, Mr. Broedel and Mrs. Broedel, resided in Marcy, New York, at the time they filed their petition.

Mr. Broedel served in New York State law enforcement for approximately 28 years, the last 11 years as a lieutenant with the Public Safety Department at the State University of New York Institute of Technology (SUNY) in Rome, New York. In 1992 and 1993, SUNY issued several notices of discipline to Mr. Broedel for alleged misconduct. In September of 1993, SUNY proposed terminating Mr. Broedel's employment for disciplinary reasons. On September 30, 1993, Mr. Broedel filed a formal complaint with the New York State Division of Human Rights (NYSDHR) charging SUNY with "an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law)" because of age and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

disability.  The complaint alleged that during 1992 and 1993, SUNY had repeatedly harassed and discriminated against Mr. Broedel and pressured him to retire.  The complaint alleged injuries of "financial loss, pain and mental anguish."[2]  The complaint was later crossfiled with the Equal Employment Opportunity Commission (EEOC).

A hearing was scheduled for December 14, 1993, before William Babiskin (Mr. Babiskin), an impartial arbitrator, regarding the notices of discipline issued to Mr. Broedel.  On the day of the hearing, Mr. Broedel, Richard Lesniak[3] (Mr. Lesniak), and Robert Patterson[4] (Mr. Patterson) met with Richard Hasselbach (Mr. Hasselbach), the attorney representing SUNY's interests, and Anthony Panebianco (Mr. Panebianco), the Director of Human Resources for SUNY and authorizing official with respect to any settlement amount SUNY would pay, to discuss the possibility of a settlement.  The parties agreed that Mr. Broedel would retire immediately in exchange for an amount equal to one and one-half times Mr. Broedel's annual salary.  The parties then met with Mr. Babiskin, and the terms of the settlement agreement were written out by him and incorporated into a consent award.

---

[2]The complaint alleged that harassment by SUNY caused Mr. Broedel to be hospitalized for stress and high blood pressure.

[3]Richard Lesniak was Mr. Broedel's union steward.

[4]Robert Patterson was a union representative.

The consent award provided:

1.  Grievant, William Broedel, will be paid back pay and all attendant benefits retroactive to September 17, 1993.

2.  Grievant shall be entitled to a lump sum cash payment equivalent to one and one-half [1½] times his present annual salary rate.  Said payments shall be made in two (2) equal installments.  The first payment shall be made on or before March 31, 1994.  The second payment shall be made on or after July 2, 1994.

3.  Grievant, William Broedel, will retire effective December 14, 1993.

4.  Grievant will execute a general release to the State University of New York relieving the University, its officers, agents, employees, and students of any and all liability arising out of and/or in connection with his employment with the State University of New York.  Said release shall be executed forthwith.

5.  Grievant's complaint before the Human Rights Commission is deemed withdrawn with prejudice and the Commission shall be notified, in writing, accordingly.

6.  Any and all Notices of Discipline issued against grievant are hereby withdrawn with prejudice.

7.  The parties will draft a mutually acceptable letter of reference concerning grievant's employment by SUNY.

8.  The arbitrator will retain jurisdiction to monitor compliance with the terms and conditions of this Award.

The consent award was signed by Mr. Babiskin and dated December 15, 1993.  In accordance with the settlement agreement, Mr. Broedel withdrew his complaints against SUNY and retired.  Under the terms of the settlement agreement, the amount Mr. Broedel was to receive was allocated between (1) backpay and attendant benefits, and (2) an amount equal to one and one-half times his

annual salary.[5] Neither the United States nor any of its individual agencies were contacted or made a part of the settlement process between Mr. Broedel and SUNY.

In 1994, Mr. Broedel received two equal payments of $29,186.25 from SUNY as required by paragraph 2 of the consent award. The first payment was dated March 28, 1994, and the second payment was dated June 8, 1994. In February of 1995, Mr. Broedel received a Form 1099-MISC, Miscellaneous Income, from the State of New York reflecting nonemployee compensation for 1994 of $29,186.25.

A dispute arose over whether Mr. Broedel was paid the proper amount under paragraph 2 of the settlement agreement. Mr. Broedel argued that the amount was supposed to be "tax free" and that the State of New York had improperly coded one of the two payments required under the settlement agreement, resulting in the issuance of a Form 1099-MISC to Mr. Broedel. On August 2, 1995, Mr. Babiskin issued a Supplemental Opinion and Award No. 2 which addressed this dispute.[6] The relevant portions of the opinion provided:

---

[5]The parties agree that the amount of $58,372.50 represents one and one-half times Mr. Broedel's annual salary. The form and taxability of the portion of the settlement award attributable to backpay and attendant benefits are not at issue.

[6]On Dec. 19, 1994, Mr. Babiskin issued a Supplemental Opinion and Award addressing an issue not relevant to this proceeding.

The Consent Award was the <u>complete</u> agreement of the parties. The claim that the payments were to be "tax free" is without merit. It flies in the face of the clear language of the stipulated settlement that led to issuance of the Consent Award.

\* \* \* \* \* \* \*

Under the terms of the Consent Award, grievant was entitled to two equal lump sum payments. The payments in the appropriate amounts were made pursuant to the Consent Award.

Furthermore, the "tax status" of the payments must be determined by the Internal Revenue Service and the Department of Taxation and Finance. I have no authority to issue "exemptions" to anyone, let alone Mr. Broedel.

It appears that Mr. Broedel has received every dime he is entitled to. If he has a tax liability, that is a matter to be worked out between Grievant and the tax collectors.

It is not my function to ignore the clear-cut language and interpret same <u>as if</u> it said something else. \* \* \*

By reason of the foregoing, I issue the following

The payments under \* \* \* the Consent Award were not intended to be "tax free." Grievant has not been underpaid. There are no additional monies owed to Grievant.

Before his retirement on December 14, 1993, Mr. Broedel took out a loan from the New York State and Local Retirement System (NYRS) against his retirement funds. On January 6, 1994, the NYRS sent Mr. Broedel a letter indicating that he had an outstanding loan balance and that he had the option of repaying the balance before January 20, 1994. If he did not repay the loan, Mr. Broedel's annual pension would be reduced. Mr. Broedel

did not repay the loan.  In 1995, the NYRS issued Mr. Broedel a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., indicating taxable pension income of $13,393.54.  The amount represented the outstanding loan balance as of Mr. Broedel's retirement date.

Petitioners did not report the $13,393.54 on their 1994 Form 1040, U.S. Individual Income Tax Return.  Petitioners did not include the $58,372.50 in payments received under paragraph 2 of the settlement agreement in gross income on their 1994 return.  However, receipt of the two payments totaling $58,372.50 was fully disclosed on an attached Form 8275, Disclosure Statement, signed by Mr. Broedel.  In the Form 8275, Mr. Broedel claimed that the payments were intended to be "a tax-free award" and that the Form 1099-MISC from the State of New York was erroneously sent to him.

Before trial, the parties stipulated an affidavit made by Mr. Babiskin.  In the affidavit, Mr. Babiskin stated that "The settlement agreement constituted the complete agreement between the parties" and "The subject of Mr. Broedel's health and/or physical condition was not discussed in * * * [Mr. Babiskin's] presence."

OPINION

Respondent argues that petitioners' gross income for 1994 must be increased by: (1) $58,372.50 to reflect the amount received under paragraph 2 of the settlement agreement, and (2) $13,393.54 to reflect income from the satisfaction of Mr. Broedel's loan from the NYRS. Petitioners claim that the amount received under the settlement agreement is excludable from gross income under section 104(a)(2) and was intended by the parties to the settlement agreement to be "tax free" and that petitioners did not realize income in 1994 when Mr. Broedel's loan from the NYRS was satisfied.

Taxability of Settlement Proceeds

Respondent determined that petitioners' gross income should be increased by $58,372.50 to account for the amount received under paragraph 2 of the settlement agreement with SUNY. Petitioners argue this amount is excludable from income under section 104(a)(2) because it was paid to settle Mr. Broedel's claim against SUNY pursuant to the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, sec. 2, 104 Stat. 328, for infliction of emotional distress and to avoid litigation of the complaint. Petitioners claim that SUNY had repeatedly harassed Mr. Broedel and damaged his reputation. Petitioners also contend

that the amount of the settlement was negotiated by the parties and was intended to be "tax free".

Gross income does not include the amount of any damages received on account of personal injuries or sickness. See sec. 104(a)(2).[7] "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. In order for damages to be excludable from gross income under section 104(a)(2), the taxpayer must demonstrate that: (1) The underlying cause of action is based upon tort or tort type rights; and (2) the damages were received on account of personal injuries or sickness. See Commissioner v. Schleier, 515 U.S. 323, 337 (1995).

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement and not its validity controls whether such amounts are excludable from gross income under section 104(a)(2). See Seay v. Commissioner, 58 T.C. 32, 37 (1972). "[T]he critical question

---

[7]The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1838, amended sec. 104(a)(2) to limit the exclusion, inter alia, to "personal physical injuries or physical sickness." The amendment does not apply to damages collected before the date of its enactment and has no bearing here.

is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

The settlement agreement allocated payments for backpay and attendant benefits and for an amount equal to one and one-half times Mr. Broedel's annual salary. The form and taxability of the amount allocated to the backpay and attendant benefits are not at issue. Because the remaining portion of the settlement agreement, $58,372.50, is not allocated among petitioners' various claims, we will examine the nature of each claim in turn.

Initially, we address petitioners' claim that Mr. Broedel suffered injury to his reputation because of harassment by SUNY. The consent award and the complaint do not refer to any claim by Mr. Broedel alleging harm to his reputation as the result of harassment by SUNY, nor is there an allocation to such a claim in the consent award. Petitioners have failed to present any evidence establishing that SUNY paid any portion of the settlement amount to compensate Mr. Broedel for injury to his reputation.

Mr. Broedel's complaint for relief was based on both State and Federal law. The complaint raised allegations under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, sec. 2, 81 Stat. 602. Recovery under the ADEA is not based upon tort or tort type rights. See Commissioner v. Schleier, supra at

336. Thus, any portion of Mr. Broedel's claim allocated to violations under the ADEA would be taxable.

Respondent concedes that Mr. Broedel's complaint with the NYSDHR alleging that he was the victim of age and disability discrimination prohibited by New York State law is based upon tort or tort type rights. However, respondent argues that petitioners have failed to show that the settlement proceeds were received on the account of personal injury or sickness. Petitioners claim that Mr. Broedel had a bona fide claim against SUNY under the ADA for infliction of emotional distress. Although the complaint fails to indicate that a claim under the ADA was being made, it does allege discrimination because of disability. To the extent a claim was made under the ADA, respondent concedes that such a claim sounds in tort. See, e.g., Phillips v. Commissioner, T.C. Memo. 1997-336 (finding that, for purposes of the motion before the Court, the taxpayer had established that a claim for relief under the ADA was based on a tort type cause of action).

In order to exclude any portion of the $58,372.50 under section 104(a)(2), petitioners must show that the payments were received on account of personal injuries or sickness, and they must establish what portion of the payments, if any, was paid on account of personal injuries or sickness arising from tort or tort type rights. Generally, when a settlement agreement deals

with different claims and does not allocate the proceeds to specific claims, and there is no evidence that a specific claim was meant to be singled out, the entire amount is considered taxable. See Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Reisman v. Commissioner, T.C. Memo. 2000-173, affd. without published opinion 248 F.3d 1151 (6th Cir. 2001); Sherman v. Commissioner, T.C. Memo. 1999-202; Morabito v. Commissioner, T.C. Memo. 1997-315; Sodoma v. Commissioner, T.C. Memo. 1996-275, affd. without published opinion 139 F.3d 899 (5th Cir. 1998). Where a settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, the most important factor in determining the application of section 104(a)(2) is the intent of the payor in making the payment. See Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21; Metzger v. Commissioner, 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).

On the day of the hearing regarding the notices of discipline, Mr. Broedel, Mr. Lesniak, and Mr. Patterson met with Mr. Hasselbach and Mr. Panebianco, SUNY's authorizing official for the settlement agreement, to discuss the possibility of a settlement. As a result of the meeting, Mr. Broedel agreed to retire immediately in exchange for an amount equal to one and one-half times his annual salary. The parties then met with Mr.

Babiskin, and the terms of the settlement agreement were written out by him and incorporated into a consent award. The consent award refers to Mr. Broedel's early retirement, the withdrawal of disciplinary actions against Mr. Broedel, the withdrawal of Mr. Broedel's complaints, and a general release to SUNY of "any and all liability arising out of and/or in connection with * * * [Mr. Broedel's] employment with * * * [SUNY]". The consent award does not refer to any personal injuries or sickness suffered by Mr. Broedel, nor does it make any allocation of the settlement payments among Mr. Broedel's various claims. Mr. Panebianco testified that SUNY's only concern in reaching a settlement with Mr. Broedel was the payment of one and one-half times Mr. Broedel's annual salary for him to retire and withdraw his complaints. Mr. Lesniak, Mr. Broedel's union steward, admitted that the payments were made so that Mr. Broedel would retire. Mr. Broedel testified that during the negotiations there was no allocation of the settlement amount among his different claims. Finally, Mr. Babiskin's affidavit states that the settlement agreement constituted the complete agreement between the parties and that the subject of Mr. Broedel's health and/or physical condition was not discussed in Mr. Babiskin's presence. Petitioners have failed to show that SUNY intended any portion of the payments to compensate Mr. Broedel for personal injuries or sickness based upon tort or tort type rights.

Petitioners' main argument is that the payments to Mr. Broedel were intended by the parties to be "tax free". Mr. Broedel and Mr. Lesniak both testified that it was their understanding that the amount received under paragraph 2 of the settlement agreement was "tax free". Petitioners also presented substantial evidence in the form of letters written by Mr. Broedel and Mr. Lesniak to several State and Federal officials in which they maintain that the settlement agreement required Mr. Broedel to receive "tax free" payments.

The consent award does not provide that the payments were intended to be "tax free". Additionally, the testimony of Mr. Panebianco and the Supplemental Opinion and Award No. 2 rendered by Mr. Babiskin both indicate that the condition that the payments be "tax free" was not part of the settlement agreement. Petitioners also argue that the Form 1099-MISC in the amount of $29,186.25 was issued as the result of improper coding and that if the payments had been intended to be taxable, then petitioners would have received a second Form 1099-MISC reflecting the other payment. However, it is just as possible that a second Form 1099-MISC was not sent by the State of New York because error caused only one payment to be coded as taxable when both payments were intended to be coded as taxable.

We note that even if the parties intended the payments to be "tax free", this does not necessarily mean that they are excluded

from gross income under section 104(a)(2). The relevant inquiry is whether the claim is based upon tort or tort type rights and the damages received are on account of personal injuries or sickness. See Commissioner v. Schleier, 515 U.S. at 337. Furthermore, neither the Internal Revenue Service nor any other agency of the United States consented to a settlement agreement awarding Mr. Broedel "tax free" payments.

The amount paid to Mr. Broedel under the settlement agreement was equal to one and one-half times his annual salary. The evidence in the record indicates that SUNY's intent in settling with Mr. Broedel was to induce his retirement and effect the withdrawal of any and all complaints against SUNY. As we stated earlier, Mr. Broedel's complaint filed with the NYSDHR included various claims. Not all of these claims were based upon tort or tort type rights. The settlement agreement did not allocate the payments among his claims, and petitioners have failed to establish what portion, if any, was paid on account of personal injuries or sickness arising from tort or tort type rights. Indeed, the fact that the amount of $58,372.50 was based on the amount Mr. Broedel would have received had he continued working another year and a half points in the direction of payment for reasons other than personal injury or sickness. See, e.g., Bland v. Commissioner, T.C. Memo. 2000-98; Morabito v. Commissioner, supra; Sodoma v. Commissioner, supra; Webb v.

Commissioner, T.C. Memo. 1996-50. Accordingly, we hold that the entire $58,372.50 is includable in petitioners' 1994 gross income.

Income From Satisfaction of Mr. Broedel's Loan Against His Retirement Account

Respondent argues that petitioners received income in 1994 because of the satisfaction of Mr. Broedel's outstanding loan against his NYRS retirement account. Petitioners argue they did not realize income because the NYRS deducted the loan amount from Mr. Broedel's retirement account when it was not repaid.

At the time of his retirement, Mr. Broedel had an outstanding loan against his retirement funds. Mr. Broedel was given the option of repaying the loan. Mr. Broedel chose not to repay the loan, and the NYRS apparently satisfied the loan by deducting the loan balance from Mr. Broedel's retirement account balance. The NYRS issued Mr. Broedel a Form 1099-R for 1994 reflecting a taxable amount of $13,393.54, representing the outstanding loan balance. Petitioners did not report this amount on their 1994 tax return. Petitioners did not present testimony at trial on this issue, and they did not argue this issue on brief. Petitioners addressed this issue only in their petition and trial memorandum, in which they claim that the loan amount was "repaid" because the NYRS deducted the loan amount from Mr. Broedel's retirement account.

Section 61(a) defines gross income as "all income from whatever source derived".  Petitioners offered no evidence or argument to support any claim that the use of funds from Mr. Broedel's NYRS retirement account to satisfy his loan was not taxable income.  On the basis of the evidence before us, we hold that petitioners realized $13,393.54.

<u>Decision will be entered</u>

<u>for respondent</u>.