T.C. Summary Opinion 2003-148

UNITED STATES TAX COURT

JACQUELINE MEDINA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13398-02S.                    Filed October 7, 2003.

Jacqueline Medina, pro se.

William C. Bogardus, for respondent.

KROUPA, Judge:  This case was heard pursuant to the
provisions of section 7463[1] in effect at the time the petition in
this case was filed.  The decision to be entered is not
reviewable by any other court, and this opinion should not be
cited as authority.

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.  All dollar amounts are rounded to the nearest whole
dollar, unless otherwise indicated.

Respondent determined a deficiency of $20,511 in petitioner's Federal income tax for 2000 and an accuracy-related penalty of $4,102 under section 6662(a). After concessions,[2] the issues for decision to be entered are:

(1) Whether $58,000 of the amount that petitioner received from settlement of a lawsuit is excludable from her gross income under section 104(a)(2). We hold it is not excludable.

(2) Whether petitioner is liable for an accuracy-related penalty under section 6662(a). We hold she is not liable.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated into our findings by this reference. Petitioner resided in Pomona, New York at the time she filed the petition in this case.

## Background

### Work and Pregnancy

Petitioner began work with Liberty Travel, Inc. (Liberty), as a clerical worker on February 2, 1996, and was promoted to operations supervisor within 2 months at an increased rate of

---

[2]Respondent concedes petitioner is not liable for the self-employment tax included in the notice of deficiency. Respondent also concedes that, assuming we find that the $58,000 amount is not excludable, petitioner is entitled to an itemized deduction of $20,000 for legal expenses, subject under sec. 67(a) to the 2-percent floor.

pay. Shortly thereafter, petitioner became pregnant with twins, and her pregnancy was evaluated as high risk.

Because of complications with her pregnancy, petitioner was away from work from September 10 until October 8, 1996, during which time she applied for and received disability benefits. Two months after petitioner returned to work, her doctor advised her to decrease her work hours, and 2 days later petitioner's doctor advised complete bed rest. Petitioner went on family leave on December 13, 1996, and stayed on family leave until April 30, 1997. That period included 1 month after petitioner delivered twin boys prematurely by Cesarean section on March 30, 1997.

Sometime late in May 1997, petitioner contacted Liberty about returning to work and was informed that there was no position available for her at that time. Liberty terminated petitioner's employment on June 22, 1997.

Lawsuit and Settlement

Petitioner filed a charge against Liberty with the Equal Employment Opportunity Commission alleging unlawful discrimination. Petitioner also retained an attorney to represent her after Liberty terminated her employment. On March 25, 1999, petitioner filed a complaint against Liberty in the U.S. District Court for the District of New Jersey (the lawsuit). The complaint raised six causes of action: (1) Unlawful discrimination against petitioner because of her pregnancy; (2) breach of contract; (3) breach of implied covenant of good faith

and fair dealing; (4) wrongful discharge; (5) intentional infliction of emotional distress; and (6) retaliatory discharge. Petitioner sought backpay along with related benefits and $2 million compensatory damages for pain and suffering and other related torts, plus $6 million for punitive damages.

Petitioner and Liberty were able to negotiate a settlement of the lawsuit. They each signed a settlement agreement (settlement agreement) in which Liberty agreed to pay petitioner $70,000. Paragraph 1 of the settlement agreement specified that Liberty would pay the $70,000 as follows:

> (a) the sum of $12,000.00 (less applicable withholdings and deductions) . . . [to] be reflected on an IRS Form W-2; and (b) the sum of $58,000.00 . . . [to] be reflected on IRS Form 1099.

Paragraph 2(c) of the settlement agreement specified that petitioner released Liberty from "all claims for wrongful discharge, breach of contract, fraud, misrepresentation, defamation, torts, or any other claims in any way related to Plaintiff's employment with and termination from Liberty Travel." In addition, paragraph 11 of the settlement agreement stated that the agreement was the result of a compromise and was made solely to avoid the expenses of litigation. Liberty expressly denied any liability to or wrongdoing against petitioner.

Settlement Payment and Petitioner's Tax Return

Liberty issued two checks made payable to petitioner pursuant to the settlement agreement. These two checks consisted of a $12,000 employee compensation check, net of all applicable withholding taxes,[3] and a separate check in the amount of $58,000 (the $58,000 amount) as nonemployee compensation free of any withholdings. Petitioner's attorney deposited both checks into his trust account and then issued petitioner a check for $43,930, the amount of the settlement less the attorney's fees and the withheld payroll taxes.

Petitioner's attorney advised her that the amount she received from Liberty was to compensate her for her legal expenses and for her personal injuries. Petitioner's attorney also advised her that the $58,000 amount was excludable from her gross income.

Liberty issued petitioner a Form W-2, Wage and Tax Statement, to report the $12,000 of back pay, and a Form 1099-MISC, Miscellaneous Income, to report the $58,000 amount.

Petitioner reported the $12,000 as wage income on her 2000 Federal income tax return, but she did not report the $58,000

---

[3]The taxability of the $12,000 backpay is not in dispute. Liberty withheld $6,070 for taxes from the backpay.

amount.  Respondent issued petitioner a notice of deficiency in which respondent determined that petitioner failed to report the $58,000 amount on her Federal income tax return.

Discussion

## 1.  Excludability of the $58,000 Amount[4]

Section 61(a) provides that "gross income means all income from whatever source derived" except as otherwise provided. Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness". The term "damages received" means an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs. The flush language of section 104(a) further provides that "emotional distress shall not be treated as a physical injury or physical sickness" for purposes of section 104(a)(2).  "[T]he

---

[4]Sec. 7491(a) places upon the Commissioner the burden of proof with respect to any factual issue relevant to a taxpayer's liability for tax if the taxpayer proves that she maintained adequate records, satisfied applicable substantiation requirements, cooperated with the Commissioner, and introduced during the Court proceeding credible evidence on the factual issue.  See Prince v. Commissioner, T.C. Memo. 2003-247. Petitioner did not assert nor present evidence or argument that she satisfied the requirements of sec. 7491(a).  However, the resolution of this issue does not depend on which party has the burden of proof.  We resolve this issue on the preponderance of the evidence in the record.

term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress."[5]  H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

Respondent determined that petitioner must include the $58,000 amount in income because none of it was received on account of any physical injury or physical sickness.  Conversely, petitioner asserts that the entire $58,000 amount is excludable from income under section 104(a)(2) because she received it for personal injuries she sustained during her pregnancy and the premature birth of her twins.

Petitioner must satisfy two requirements to exclude the $58,000 amount from income under section 104(a)(2).  She must prove first that the underlying cause of action giving rise to her recovery of the payment is based upon tort or tort type rights, and second that the payment was received on account of

---

[5]Petitioner's complaint raised intentional infliction of emotional distress as a cause of action.  However, the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838 (the 1996 amendment), amended sec. 104(a)(2) to narrow the exclusion for personal injury damages received pursuant to a judgment or settlement, effective for amounts received after Aug. 20, 1996.  Under the 1996 amendment, personal injury or sickness must be physical.

personal physical injuries or physical sickness.  See

Commissioner v. Schleier, 515 U.S. 323, 328 (1995); see also sec.

104(a)(2); sec. 1.104-1(c), Income Tax Regs.

We find petitioner meets the first prong, having brought a

tort type action against Liberty.  We then turn to whether the

$58,000 amount pursuant to the settlement agreement with Liberty

was received on account of a personal physical injury or physical

sickness.

When damages are received pursuant to a settlement

agreement, as here, the nature of the claim that was the actual

basis for settlement, not the validity of that claim, controls

whether the amounts are excludable under section 104(a)(2).  See

Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d

393 (8th Cir. 1997).  Determining the nature of the claim is a

factual inquiry that is generally made by reference to the

settlement agreement.  Robinson v. Commissioner, 102 T.C. 116,

126 (1994) (and cases cited threat), affd. in part and revd. in

part on another ground 70 F.3d 34 (5th Cir. 1995).  If the

settlement agreement lacks express language stating what the

settlement amount was paid to settle, we determine the intent of

the payor by considering all the facts and circumstances of the

case, including the complaint filed and details surrounding the

litigation.  Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 127.

We therefore look to the settlement agreement to examine the nature of the claim.  The settlement agreement does not allocate any part of the settlement payment to a personal physical injury or physical sickness.  Indeed, there is no reference to a physical injury or physical sickness resulting from Liberty's actions, nor does the settlement agreement specifically carve out any portion of the settlement payment as a settlement on account of personal physical injury or physical sickness.

Reviewing the settlement agreement to ascertain Liberty's intent in making the settlement payment also does not support petitioner's argument.  Under the settlement agreement, petitioner generally released Liberty from any "claims in any way related to Plaintiff's employment with and termination from Liberty Travel" in exchange for the total $70,000 Liberty agreed to pay petitioner to settle the lawsuit.  The settlement agreement also states that Liberty and petitioner were entering into the agreement as the result of a compromise and that the agreement was being made solely to avoid the costs of litigation. Liberty further expressly denied any wrongdoing against petitioner.

We conclude that no portion of the $58,000 amount was

received on account of any physical injury or physical sickness. Accordingly, the $58,000 amount is not excludable under section 104(a)(2).

## 2. Accuracy-Related Penalty

We turn now to the determination in the notice that petitioner is liable for the year at issue for the accuracy-related penalty under section 6662(a). Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent determined that petitioner is liable for the accuracy-related penalty for a substantial understatement of income tax under section 6662(b)(2). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A).

Respondent has met his burden of production with respect to the accuracy-related penalty. Petitioner reported taxable income of $42,300 and Federal income tax of $6,794. Respondent determined petitioner's taxable income was $98,231 and that petitioner had an income tax deficiency of $20,511. After considering respondent's concessions, we are satisfied that petitioner substantially understated the income tax required to be shown on her return for the year at issue.

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, that portion.  Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner argues that she is not liable for the accuracy-related penalty because she relied upon the advice of her attorney to exclude the $58,000 amount.  While the Commissioner bears the burden of production under section 7491(c), the taxpayer bears the burden of proof with regard to issues of reasonable cause, substantial authority, or similar provisions. Higbee v. Commissioner, supra at 446.  Therefore, petitioner must show that she supplied her adviser with all the correct and necessary information and that her error in not reporting the $58,000 amount was the result of her adviser's mistake.

In the instant case, petitioner's attorney represented her during all stages of the lawsuit, including filing the complaint and negotiating the settlement agreement.  Furthermore, the attorney endorsed and deposited the two checks Liberty made

payable to petitioner into his trust account and paid petitioner the net settlement proceeds with a check drawn on that account. Thus, we find that petitioner's attorney had complete knowledge of all the necessary and relevant facts of petitioner's lawsuit and the settlement agreement. Moreover, there is nothing in the record to show that petitioner had any reason to suspect her attorney's advice was not competent. Considering all the facts and circumstances in this case, we find that petitioner acted with reasonable cause and in good faith with respect to the underpayment for the year at issue. See sec. 6664(c)(1). Accordingly, we conclude that petitioner is not liable for the accuracy-related penalty imposed under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.