T.C. Summary Opinion 2005-182

UNITED STATES TAX COURT

VERNADEAN A. PATES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5802-04S.                Filed December 8, 2005.

Vernadean A. Pates, pro se.

<u>John F. Driscoll</u>, for respondent.

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

---

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year at issue.

Respondent determined a deficiency of $12,575 in petitioner's Federal income tax for 2001. The sole issue for decision is whether $54,000 of a $90,000 payment received by petitioner from her former employer during 2001 is excludable from gross income under section 104(a)(2).[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner was a legal resident of Birmingham, Alabama.

Petitioner became an employee of Regions Bank (Regions) in 1996. Her employment with Regions was mutually terminated in November 2001 pursuant to a Settlement Agreement and Release (Agreement) in which she received the monetary settlement that is the subject of this litigation.

Petitioner was hired as a money transfer clerk, level II, by Regions in July 1996 earning $8.75 per hour. Petitioner had previously worked for several banks in the area, and, when she left one bank to join Regions, the previous employer listed her

---

[2]Petitioner accepted a $90,000 settlement, and $36,000 of that amount was paid directly to her attorney for attorney's fees. In the notice of deficiency, respondent did not determine that the $36,000 constituted gross income. In Commissioner v. Banks, 543 U.S. 426 (2005), the Supreme Court held that attorney's fees in a settlement recovery that is excludable from income under sec. 104 constitute gross income. The attorney's fees are deductible as an itemized deduction. Respondent did not move to increase the income determination to reflect the recent decision; therefore, the only issue is whether the $54,000 paid directly to petitioner is taxable.

as ineligible for rehire because she "would not follow instructions and caused many disruptions in the work area". As a money transfer clerk at Regions, petitioner was reviewed frequently. In her first review, the supervisors listed petitioner's work as unsatisfactory, noting that she often "bickered" with her coworkers, was not always dependable, and did not seem to grasp the job. It was particularly noted that petitioner made multiple wire transfer errors that, had they not been detected by a supervisor, would have caused Regions to lose several million dollars. A subsequent review, in January 1997, showed petitioner dealt well with customers but further stated she still needed to improve. The review also noted that petitioner made many errors that caused extra work for other employees.

Sometime in early 1997, petitioner was transferred to another department as a utility clerk. Petitioner considered this a demotion even though she received a slight pay increase.[3] Petitioner received one negative review shortly after that transfer, which noted she was still unreliable. After that, however, petitioner received satisfactory reviews and continued to get periodic pay increases.

---

[3]Petitioner testified at trial that she never received pay raises from Regions; however, she admitted during a deposition in the title VII lawsuit that she had received numerous pay raises.

In 1998, petitioner filed a race discrimination action against Regions with the U.S. District Court for the Northern District of Alabama, pursuant to title VII of the Civil Rights Act of 1964, as amended. Petitioner alleged that co-workers whom she felt were less qualified were receiving jobs and promotions that she had applied for. Petitioner asserted this was due solely to her race, African-American.

Petitioner continued working for Regions while her suit was pending. In November 2001, petitioner and Regions agreed to mediation, which resulted in a settlement wherein Regions agreed to pay petitioner $90,000 in return for the dismissal of the title VII action and her resignation from Regions. Petitioner received $54,000, and her attorney received $36,000 in fees. Both parties agreed to keep the terms of the settlement confidential. Petitioner resigned her employment, and the action was dismissed by joint stipulation on December 4, 2001.

Petitioner filed her 2001 Federal income tax return timely but did not include the $54,000 as income on her return. The sole issue before the Court is whether petitioner must include, as gross income, the $54,000 settlement she received from Regions. See supra note 2.

Section 104(a)(2) excludes from gross income "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic

payments) on account of personal physical injuries or physical sickness". Section 1.104-1(c), Income Tax Regs., defines "damages received" as "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Amounts are excludable from gross income only when (1) the underlying cause of action giving rise to the recovery is based on tort or tort type rights, and (2) the damages are received on account of personal injuries or sickness. Commissioner v. Schleier, 515 U.S. 323, 337 (1995). The flush language in section 104(a) further provides that "emotional distress shall not be treated as a physical injury or physical sickness." Sec. 104.

Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such amounts are excludable from income under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). Determination of the nature of the claim is a factual inquiry and is generally made by reference to the settlement agreement. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part 70 F.3d 34 (5th Cir. 1995). "[W]here an amount is paid in settlement of a case, the critical question is, in lieu of what was the settlement amount paid." Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd.

121 F.3d 393 (8th Cir. 1997). An important factor in determining the purpose of the payment is the "intent of the payor". Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33. If the payor's intent cannot be clearly discerned from the settlement agreement, the intent of the payor must be determined from all the facts and circumstances of the case, including the complaint filed and details surrounding the litigation. Robinson v. Commissioner, supra at 127.

The agreement that petitioner and Regions entered into states: "In consideration of the promises made herein by Pates, Employer agrees that it will pay to Pates and her attorney * * * ($90,000) for attorney's fees and compensatory damages for emotional distress under Title VII of the Civil Rights Act of 1964, as amended". The Agreement is dated November 27, 2001, and was signed by all parties.

Under section 104(a)(2), as amended and in effect for 2001, the mediation agreement pursuant to which the $54,000 (excluding attorney's fees) was paid to petitioner clearly was not a settlement for personal physical injuries or physical sickness but was specifically for emotional stress she sustained due to racial discrimination. Additionally, no portion of the settlement included payment for any medical expenses petitioner

sustained or might sustain for her emotional stress.[4]
Accordingly, the Court holds that no portion of the $54,000 settlement is excludable from gross income. Respondent, therefore, is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.

---

[4]Petitioner testified at trial that she developed narcolepsy and extreme fatigue while working at Regions due to the stress of her mistreatment. Petitioner, however, did not claim physical sickness either in the language of her suit against Regions or in her deposition with Regions' counsel. The only physical ailments petitioner claimed during her deposition were unrelated "female problems". Furthermore, petitioner stated in her deposition that she was suing Regions solely for racial discrimination.