T.C. Summary Opinion 2021-33


UNITED STATES TAX COURT


REBECCA A. TRESSLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6987-19S.                    Filed September 13, 2021.


<u>Laila E. Leigh</u>, for petitioner.

<u>Ka Tam</u> and <u>Bartholomew Cirenza</u>, for respondent.


SUMMARY OPINION


GREAVES, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code (Code) in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner received a $55,000 settlement payment from her former employer in 2014 and seeks to exclude at least half this amount from her 2014 gross income. Specifically, petitioner claims that because she received a portion of the settlement payment on account of personal physical injuries or physical sickness, that portion is excludable under section 104(a)(2).  We hold that she may exclude only $6,980 of the payment.  That amount corresponds to the $6,980 she paid out of pocket for psychotherapy from mid-2012 to the end of 2014, which was medical care for emotional distress.

## Background

The parties filed stipulations of facts with attached exhibits and stipulations of settled issues, all of which are incorporated by this reference.  Petitioner resided in Virginia when she filed the petition.

---

[1]Unless otherwise noted, all section references are to the Code in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner filed a lawsuit against the National Railroad Passenger Corp. (Amtrak), her employer at the time, in the U.S. District Court for the District of Columbia on October 28, 2009. On October 29, 2010, petitioner amended her complaint. The amended complaint explained that petitioner had worked for Amtrak as a railroad engineer and road foreman since 1987, and it asserted a litany of claims focused on workplace harassment and retaliatory employment practices. Among other claims, petitioner alleged she had endured emotional distress and that she experienced a workplace sexual assault, physical injuries resulting from a workplace stalking incident, physical manifestations of stress caused by the hostile work environment, and an injury to her ankle sustained exiting a train while on duty.

The District Court granted Amtrak's motion for summary judgment on November 30, 2012, and petitioner appealed the judgment to the U.S. Court of Appeals for the District of Columbia Circuit. In February 2014 petitioner and Amtrak agreed to settle the case for an $82,500 payment from Amtrak to petitioner. In section 1 of the settlement agreement petitioner "waives and releases any and all claims" against Amtrak and certain related parties "arising from or relating to any and all acts, events and omissions occurring prior to" February 21,

2014, the date petitioner signed the agreement.[2]  Section 2 establishes the payment terms.  In particular section 2.1 provides that Amtrak will withhold taxes on $27,500 of the settlement payment, which represents "settlement of Ms. Tressler's claims against Amtrak" in her lawsuit.  Section 2.2 provides that the remaining $55,000 represents "settlement of Ms. Tressler's claim for emotional distress damages related to her allegations" in the lawsuit.  Section 2.5 explains that the payments provided in section 2.1 and 2.2 are "inclusive of all claims by Ms. Tressler for any alleged damages against Amtrak, including, but not limited to, any alleged claims for physical injuries, emotional distress, attorneys' fees, and costs".  Amtrak paid the full $82,500 by check on May 1, 2014.

Petitioner first sought psychiatric help in 2006.  She was later treated for post-traumatic stress disorder (PTSD) arising from the workplace sexual assault and her other traumatic experiences as an Amtrak employee.  Petitioner began seeing her current therapist in 2012 and incurred $4,580 out of pocket for

---

[2]References to sections 1 and 2, including section 2.1, 2.2, and 2.5, are to the settlement agreement.

psychotherapy from July 5, 2012, to February 24, 2014.[3] Petitioner incurred an additional $2,400 through the end of 2014 and further charges from 2015 to 2018.

Petitioner did not timely file a U.S. individual income tax return for 2014. Pursuant to section 6020(b), respondent prepared a substitute for return for petitioner's 2014 tax year that includes the entire $82,500 payment in gross income and sent petitioner a notice of deficiency for 2014 dated March 4, 2019. Petitioner sought redetermination of the deficiency in this Court on May 1, 2019.[4] She does not contest the inclusion of the $27,500 portion of the payment but asserts that section 104(a)(2) allows her to exclude at least half, if not all, of the $55,000 balance.

---

[3]The Court finds that the actual end date is February 24, 2014, even though the stipulation gives the end date as February 24, 2012. See Rule 91(e); Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989) (holding that the Tax Court may disregard a stipulation between parties where justice requires it if the stipulation is clearly contrary to the facts disclosed by the record).

[4]If we find that any portion of the $55,000 constitutes taxable income, petitioner asks us not to impose the sec. 6651(a)(1) addition to tax for failure to file or the sec. 6651(a)(2) addition to tax for failure to pay that respondent determined. We do not address these items because petitioner concedes in the stipulation of settled issues that she is liable for both additions to tax "in an amount to be redetermined based on the tax liability ultimately decided by the Tax Court." See Rule 91(e); Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 334-335 (1997) (explaining that a court will not set aside a settlement stipulation unless good cause is shown), aff'd, 208 F.3d 205 (3d Cir. 2000). Furthermore, the parties agree that petitioner is not liable for the sec. 6654 addition to tax that respondent determined for failure to pay proper estimated tax.

Discussion

The Commissioner's determinations set forth in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner does not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact. A taxpayer must keep all books and records necessary to substantiate any claimed exclusion from gross income. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Settlement proceeds paid to a taxpayer constitute gross income unless the taxpayer proves they fall within a specific statutory exception. See Commissioner v. Schleier, 515 U.S. 323, 328-337 (1995). Section 104(a)(2) supplies one such exception, excluding from gross income "any damages (other than punitive damages) received (whether by suit or agreement * * *) on account of personal physical injuries or physical sickness". Damages for emotional distress generally do not qualify for the section 104(a)(2) gross income exclusion because emotional distress is not treated as a physical injury or physical sickness. See sec. 104(a) (flush text); sec. 1.104-1(c)(1), Income Tax Regs. The foregoing authorities create two exceptions to this rule: Section 104(a)(2) does exclude from gross income (1) damages for emotional distress attributable to a physical injury or physical

sickness and (2) damages not in excess of the amount paid for medical care described in section 213(d)(1)(A) or (B) for emotional distress. Section 213(d)(1)(A) includes amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body". This Court has held that this definition of medical care includes psychotherapy. See Fischer v. Commissioner, 50 T.C. 164, 173, 176 (1968).

When a taxpayer receives damages pursuant to a settlement agreement, the nature of the claim that was the basis for the settlement controls whether the damages are excludable under section 104(a)(2). See United States v. Burke, 504 U.S. 229, 237 (1992); Bagley v. Commissioner, 105 T.C. 396, 406 (1995) ("[T]he critical question is, in lieu of what was the settlement amount paid[?]"), aff'd, 121 F.3d 393 (8th Cir. 1997). What petitioner and Amtrak intended to compromise through the settlement agreement is a question of fact determined by reference to the text of the agreement. See Simpson v. Commissioner, 141 T.C. 331, 340 (2013), aff'd, 668 F. App'x 241 (9th Cir. 2016). Where the agreement does not disclose the nature of the claim underlying a settlement payment, we look to the payor's intent, examining extrinsic evidence including the allegations in the payee's complaint. See id.; Bent v. Commissioner, 87 T.C. 236, 245 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987).

- 8 -

The plain text of section 2.2 establishes that the $55,000 payment represents "settlement of Ms. Tressler's claim for emotional distress damages related to her allegations" in the lawsuit. Petitioner points to section 2.5, which provides that the $82,500 payment "is inclusive of all claims by Ms. Tressler for any alleged damages against Amtrak, including, but not limited to, any alleged claims for physical injuries, emotional distress, attorneys' fees, and costs". We recognize that petitioner's complaint in District Court included allegations of physical injuries, but section 2.5 does not state that any part of the $55,000 payment is attributable to the settlement of a physical injury claim. Section 2.5 is a general exculpatory provision whereby petitioner relinquishes the right to further sue Amtrak. This Court has held that a general liability release does not supersede explicit contractual text providing a settlement payment for emotional distress. See Doyle v. Commissioner, T.C. Memo. 2019-8, at *12, *15. We simply cannot accept petitioner's request to allocate the $55,000 payment among her claims for "physical injuries, emotional distress, attorneys' fees, and costs" when section 2.2 attributes the whole $55,000 to her claim for emotional distress damages related to her claims in the lawsuit.

Although the text of the settlement agreement itself resolves this issue, petitioner points us to extrinsic evidence that Amtrak "had every reason to

compensate" her for her physical injuries, which were well known to Amtrak when it settled the case. Petitioner testified that she was the victim of a violent sexual assault that occurred while she was on duty at Amtrak, and that Amtrak was aware of the assault. While the Court found her testimony credible, the absence from section 2.2 of any reference to physical injuries represents a conscious choice by petitioner and Amtrak to exclude physical injuries, including any physical injuries from the sexual assault, from the $55,000 settlement allocation.

That leaves the question whether petitioner can exclude any of the payment under either of the two exceptions to the general rule that emotional distress damages are outside the scope of section 104(a)(2). We reject petitioner's argument that the first exception allows her to exclude from 2014 gross income at least half the $55,000, which she says compensates her for emotional distress resulting from her workplace injuries. Section 2.2 of the settlement agreement allocates the $55,000 to petitioner's emotional distress but does not say what caused her emotional distress. Following the Tax Court's suggestion in Bent, we turn to petitioner's amended complaint in District Court, which attributes her emotional distress to the harassment and retaliation she endured on the job, not to any physical injuries. The complaint repeatedly alleges that petitioner sustained emotional distress "as well as" physical injuries, and the portion of the complaint

describing her physical injuries does not allege any associated emotional distress. Neither the District Court opinion granting Amtrak's summary judgment motion, Tressler v. Nat'l R.R. Passenger Corp., No. 09-cv-2027 (RLW) (D.D.C. Nov. 30, 2012), nor the materials in our record relating to the settlement process,[5] reference emotional distress attributable to physical injuries.

The second exception permits a taxpayer to exclude damages not in excess of the amount paid for medical care for emotional distress. Petitioner has not carried her Rule 142(a) burden of establishing her right to exclude any of the $55,000 on account of her expenditures on psychiatric medication, or on psychotherapy through 2011. She testified that she does not remember how much she spent on these items, and has not complied with her obligation to maintain documentary proof of these expenditures.

On the other hand, petitioner may exclude $6,980 of the settlement proceeds, which corresponds to the $6,980 her psychotherapist billed from July 5, 2012, to the end of 2014. Section 104(a)(2) permits a taxpayer to exclude the amount

---

[5]These materials include petitioner's mediation statement, which sets forth her arguments for reversal of the trial court decision (Ex. 17-J), available email correspondence between her counsel and Amtrak pertaining to settlement discussions (Ex. 18-J), the transcript of her deposition by Amtrak on June 30, 2011 (Ex. 20-J), and Exhibit 18 of the deposition, a chiropractic intake form she completed (Ex. 21-J).

"paid" for medical care, as opposed to the amount incurred. Although the record does not disclose when petitioner paid the bills, we infer she paid for each therapy session on or about the date it occurred, because the billing statement shows she paid for each session with a unique check, and the therapist consistently administered therapy over a period of years. Psychotherapy is medical care for purposes of section 104(a)(2), and petitioner received psychotherapy to help her cope with her PTSD.

As for any psychotherapy bills petitioner paid after 2014, a taxpayer must report an unrestricted cash payment as income for the year in which it was received, irrespective of any possible subsequent events. See N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932); Green Gas Del. Statutory Tr. v. Commissioner, 147 T.C. 1, 58-59 (2016), aff'd, 903 F.3d 138 (D.C. Cir. 2018). Petitioner must recognize the remaining $48,020 as income for 2014 because she received the $55,000 settlement payment in 2014, which she was free to spend however she chose. Section 6214(b) allows us to determine petitioner's liability only for the year shown on the notice of deficiency, see Williams v. Commissioner, 131 T.C. 54, 55 (2008), so we do not address the tax treatment in later years of any subsequent amounts she spent on psychotherapy.

To reflect the foregoing,

Decision will be entered

under Rule 155.